934 F.2d 171
 George OLDENBURGER, Appellant,
v.
CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS TEAMSTER
PENSION FUND; Loran W. Robbins; Marion M. Winstead;
Robert C. Sasone; R. Jerry Cook; Robert J. Baker; Howard
McDougall; R.V. Pulliam, Sr.; Arthur H. Bune, Jr., Appellees.
 No. 90-2053.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 9, 1991.
Decided May 30, 1991.
 
 Terry W. Guinan, Fort Dodge, Iowa, for appellant.
 Joan P. Simmons of Rosemont, Ill., for appellees.
 Before ARNOLD and WOLLMAN, Circuit Judges, and BRIGHT, Senior Circuit Judge.
 WOLLMAN, Circuit Judge.
 
 
 1
 This case presents an issue concerning the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001, et seq. George Oldenburger appeals from the district court's[1] grant of summary judgment for Central States, Southeast and Southwest Areas Pension Fund and denial of his motion for a new trial and motion to alter or amend the judgment. We agree with the district court that the decision of Central States' Trustees to deny Oldenburger's pension request was not arbitrary or capricious, and we therefore affirm.
 
 I.
 
 2
 Oldenburger first applied for a pension in January 1975. Central States denied his request that year. More than ten years later, Oldenburger sought and obtained review of the denial through Central States' internal review procedure.
 
 
 3
 On his original application for a pension in 1975, Oldenburger stated that he had been a foreman for McCoy Truck Lines from 1937 until 1961; a foreman for Briggs Transportation Company from 1961 until 1969; and a foreman for Takin Brothers Freight Lines from 1969 through 1975.
 
 
 4
 Central States' records revealed that McCoy was not a contributing employer to the pension fund until 1955. Only three years of pension contributions, from March 1958 through May 1961, were submitted for Oldenburger by McCoy. In response to inquiries from Central States, Local Union 650 informed Central States that Oldenburger was a terminal manager at McCoy from 1955 until 1958 and that he was not covered by a collective bargaining agreement during that period of time.
 
 
 5
 In regard to Oldenburger's employment at Briggs, Central States contacted Local 844, the local union that would have contracted with Briggs and Takin Brothers during the years at issue. Local 844 responded that Oldenburger "made the choice of going 'company foreman' when Briggs took over McCoy Truck Lines. Some companies allowed working foremen under the [collective bargaining agreement], such as McCoy Truck Lines, but Briggs did not, therefore, no contributions were due on his behalf."
 
 
 6
 With respect to Oldenburger's employment at Takin Brothers, Central States contacted Takin, which informed Central States that Oldenburger was on a withdrawal card from the union while employed at Takin. Oldenburger's social security records indicate that he was a salaried employee at Briggs during 1961 through 1968 and while at Takin Brothers from 1969 through 1974.
 
 
 7
 Oldenburger submitted affidavits by four co-workers at McCoy and Briggs that described Oldenburger's positions as requiring the same type of work as other dock workers and truck drivers with minor supervisory authority. Other documents described Oldenburger's positions as a supervisor; part-time truck driver and part-time warehouse man; a working foreman; and a terminal manager.
 
 
 8
 Oldenburger's request for pension benefits was denied by Central States' Benefits Claim Review committee on April 9, 1987. Central States' Benefits Claim Appeals Committee, the next step in the procedure, rejected his claim on May 29, 1987. The Appeals Committee determined that contributions were not owed by Oldenburger's employers from 1955 through February 1958 and from May 1961 through 1974 because the type of work Oldenburger performed was not covered by the applicable collective bargaining agreements.
 
 
 9
 The claim was then presented to the Central States Board of Trustees at its meeting of August 13-14, 1987. The information provided to the Trustees gave varying accounts of Oldenburger's work history with his three employers. The Trustees voted to deny Oldenburger's appeal, finding that he had been employed in a supervisory capacity, was not an employee as defined in the pension plan, and did not establish any right to service credit. The district court affirmed the Trustees' decision, and this appeal followed.
 
 II.
 
 10
 The standard of review to be applied to the denial of pension benefits under an ERISA plan depends upon whether the instrument establishing the plan expressly gives the fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms. If it does, then the fiduciary's decisions are reviewed under the deferential arbitrary-and-capricious standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-15, 109 S.Ct. 948, 954-57, 103 L.Ed.2d 80 (1989). Thus, our first inquiry is whether the Trustees of Central States' pension fund had discretionary power to construe uncertain terms in the benefit plan. Lakey v. Remington Arms Co., 874 F.2d 541, 544 (8th Cir.1989).
 
 
 11
 We conclude that Article IV, Section 17 of Central States' Trust Agreement gives the Board of Trustees discretionary authority to construe the terms of the trust agreement and the terms and regulations of the pension plan:
 
 
 12
 The Trustees, by majority action, shall have the power to construe the provisions of this Agreement and the terms and regulations of the Pension Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees and Employers.
 
 
 13
 The question before us, then, is whether the Trustees acted unreasonably in construing uncertain terms in the plan, that is, whether they denied Oldenburger's pension arbitrarily or capriciously. Lakey, 874 F.2d at 544. See also Short v. Central States, Southeast & Southwest Areas Pension Fund, 729 F.2d 567, 571 (8th Cir.1984).
 
 
 14
 Article III, Section 1 of the plan provides:Conditions for Retirement. An employee who has reached the NORMAL RETIREMENT DATE shall be eligible for the retirement benefit provided for by this Pension Plan, if at retirement
 
 
 15
 (a) he has attained age sixty; and
 
 
 16
 (b) he has completed twenty years of service in the industry; and
 
 
 17
 (c) he has completed three years of service under a collective bargaining agreement; and
 
 
 18
 (d) he has had at least eighty weeks of contributions paid to the Trust Fund by the employer on his behalf.
 
 An employee under the plan is
 
 19
 a person who has been on the payroll of an employer for thirty (30) days or more and is employed under the terms and conditions of a collective bargaining agreement entered into between an employer and a union and on whose behalf payments are made to the Trust Fund by the employer[.]
 
 
 20
 Pursuant to Article IV, Section 17, the Trustees were vested with discretion to interpret the meaning of the requirements of eligibility under Article III, Section 1, and possessed the authority to decide whether Oldenburger fit under those terms of the plan. The Trustees determined that Oldenburger was not an employee under the plan at his normal retirement date because, as a supervisor, he had not been covered by a collective bargaining agreement after 1961. Based upon the record before them, the Trustees concluded that Oldenburger was 50 years old at the time he ceased to be an employee, as that term is defined in the plan. Oldenburger was found to be ineligible for a pension under the plan when he reached his normal retirement date because he was no longer an employee. Although Oldenburger had three years of service under a collective bargaining agreement (1958-61) he did not have the requisite 80 weeks of contributions paid to the trust fund on his behalf.
 
 
 21
 We limit our review to the evidence that was before a pension fund's board of trustees when the final decision was made. Short, 729 F.2d at 571; Perry v. Simplicity Engineering, 900 F.2d 963, 966 (6th Cir.1990). In this case, the Trustees considered conflicting evidence. Oldenburger's affidavits indicate that he was not a supervisor prior to 1961 and that he continued to perform the same work thereafter. Letters from the local unions and Oldenburger's earnings statements, however, show that between 1955-58 and from 1961 on, Oldenburger was a supervisor and that during a portion of that time was a company foreman. The evidence submitted to the Trustees does not show that any contributions had been made to the fund other than the three year period of 1958-61.
 
 
 22
 The Trustees were presented with substantial evidence that Oldenburger was not an employee under a collective bargaining plan for the requisite period and was employed in a supervisory capacity, both of which conditions precluded his eligibility for a pension under Central States' plan. That the Trustees denied Oldenburger's pension based on conflicting evidence does not render their decision arbitrary or capricious. Even were a less deferential standard of review to apply, the trustees' decision would be sustained inasmuch as Oldenburger failed in his burden of proving his employment came within the express language of the pension coverage.
 
 
 23
 The district court's judgment is affirmed.
 
 
 
 [1]
 The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa