Howard E. COX, Appellee,

v.

MID–AMERICA DAIRYMEN, INC., A
Kansas Corporation, Appellant,

Mid–America Dairymen, Inc. Retirement
Plan; Northern Trust Company.

No. 91–1066.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1991.

Decided May 11, 1992.

Rehearing Denied June 11, 1992.

Wayne H. Hoecker, Kansas City, Mo.,
argued, for appellant.

Gary T. Nelms, Springfield, Mo., argued,
for appellee.

Before JOHN R. GIBSON, BOWMAN
and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

This is an employee's action under
ERISA, 29 U.S.C. §§ 1001 *et seq.*, to review

the denial of disability benefits under his employer's retirement plan. The district court entered summary judgment awarding benefits to Howard E. Cox, concluding that the Plan's trustees had abused their discretion in finding him not disabled. The employer, Mid–America Dairymen, Inc., has appealed. We conclude that the trustees did not adequately explain their discretionary decision to deny Cox benefits; thus, a reviewing court cannot determine whether that discretion was abused. Accordingly, we remand with directions to remand these proceedings for further consideration by the trustees.

## I. Factual and Procedural Background

In December 1985, Cox had a heart attack that resulted in angioplasty surgery. He returned to his job as a full-time maintenance worker at Mid–America's milk plant on January 30, 1986, and continued to work until June 18, 1987, when he was laid off because of a plant closing. He initially requested recall and transfer to another plant. However, on July 28, 1987, he gave up his recall rights and terminated his employ in order to receive a pay-out from Mid–America's pension plan.

In February 1988, Cox applied to a different employer for a job that required heavy labor. Responding to an inquiry from another physician, Cox' cardiologist, Dr. John Best, wrote:

> Howard Cox is now approximately two years status post angioplasty.... Since that time he has done relatively well without any episodes of chest pain or arrhythmias.
>
> At this time I feel Mr. Cox can probably return to normal activity but again, still should avoid extremes of heat and cold and extremes of isometric exertion.

Cox was not hired for that position.

In March 1988, Cox applied for Social Security disability benefits, alleging a disability onset date of June 2, 1987. In May 1988, he had a medical re-evaluation at Dr. Best's clinic, which reported "recurrent angina, post angioplasty." In September 1988, just prior to Cox' Social Security hearing, Dr. Best wrote:

> Mr. Cox has had a continuing deterioration of his health with recurrent Class III–IV angina pectoris....
>
> I feel it is imperative that Mr. Cox be considered for repeat angiography in order that he can return to gainful employment. At this time he is totally and completely disabled.

On October 18, 1988, the Social Security Administrative Law Judge ruled that Cox had been disabled for purposes of the Social Security Act since June 2, 1987; the ALJ's opinion did not discuss why he selected the disability onset date alleged by Cox, as opposed to a later date.

In December 1988, Cox applied for disability benefits under Mid–America's Retirement Plan. He alleged that he became disabled on May 1, 1987, and submitted a statement by Dr. Best as the attending physician that:

> [Cox] had a myocardial infarction in December of 1985. Since then he has intermittent chest pain..... [Cox] is disabled totally from his usual & standard occupation since May of 1987.

On December 27, 1988, Mid–America's Retirement Committee (the Plan trustees) denied Cox' application, explaining that "our records indicate you were continuously working until you were laid off on June 18, 1987 and that you were willing to transfer to another facility if work was available." As permitted by the Plan, Cox then appealed to the Retirement Committee and submitted a February 20, 1989 letter from Dr. Best to Cox' attorney stating:

> It is my opinion that as a result of Mr. Cox' three vessel coronary disease, he was disabled from the time of his infarct [December 1985] from his usual and standard duties as a maintenance worker at his Mid–America Dairy Plant.

The Retirement Committee submitted Cox' file to a "Physician Advisor who is board certified in cardiology,"[1] asking for a determination of Cox' disability status as

---

1. The Committee did not submit Dr. Best's February 1989 letter, which was excluded "as a self serving document apparently prepared in anticipation of litigation."

of the date of his voluntary termination, July 28, 1987. This consultant reported:

> The clinical history documents coronary artery disease ... for which treatment had been attempted without complete success., Although the patient undoubtedly suffered acute myocardial infarction in 1985, best evidence suggests that following the infarction and treatment of it he recovered ... and did not initially have angina. The first report of recurrent angina was in May, 1988, and at that time a treadmill exercise test did not confirm evidence of myocardial ischemia. As far as I can tell, there was no evidence of disability in July of 1987.

The Retirement Committee denied Cox' appeal, explaining in the minutes of its June 30, 1989, meeting "that there was not sufficient evidence to establish that Mr. Cox was disabled prior to the time his employment with Mid–Am terminated."

Cox then commenced this action "to recover benefits due to him under the terms of his plan," 29 U.S.C. § 1132(a)(1)(B). Mid–America conceded that Cox was disabled when he commenced this action, but defended the Retirement Committee's decision that he was not "totally and permanently disabled"—the key phrase in the Retirement Plan—when he left Mid–America's employ. The district court granted summary judgment in favor of Cox, concluding that the Retirement Committee had abused its discretion by:

> rely[ing] chiefly on the opinion of a medical doctor who did not examine the plaintiff, and ... totally disregard[ing] credible contradictory evidence from the plaintiff's own treating physician, as well as the extensive examination of plaintiff done by the [Social Security] ALJ.

This appeal followed.

## II. The Standard of Review

■ ERISA expressly provides for judicial review of benefit denial decisions, but does not specify the appropriate standard of review. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), borrowing from traditional trust law principles, the Supreme Court stated that a deferential standard of review is appropriate under § 1132(a)(1)(B) if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." In this case, § 6.03 of Mid–America's Retirement Plan provides:

> In case of any factual dispute hereunder, the Retirement Committee shall resolve such dispute giving due weight to all evidence available to it. The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan.

We agree with the district court that this Plan language requires that a deferential abuse of discretion standard be applied both to the Retirement Committee's interpretations of the Plan and to its fact-based disability determinations.[2]

Although *Bruch* involved a trustee decision that was reviewed *de novo*, the Supreme Court provided considerable guidance in applying a deferential standard, first, by clarifying that traditional trust law principles are the relevant frame of reference, and second, by specifically citing the Restatement (Second) of Trusts § 187, Comment *d*, in briefly discussing how the deferential standard may be affected when the trustee is acting under a conflict of interest. 489 U.S. at 115, 109 S.Ct. at 956. Section 187 of the Restatement provides that discretion conferred upon a trustee "is not subject to control by the court, except to prevent an abuse by the trustee of his

---

2. The Plan's specificity in this regard permits us to avoid an issue that has recently divided other circuits—whether the *de novo* or the deferential standard of review applies to a trustee's fact-based benefits determination if the plan does not expressly provide that such determinations are discretionary. *See Pierre v. Connecticut Gen. Life Ins. Co.*, —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (Justice White, dissenting from the denial of certiorari). Our circuit has apparently sided with those adopting the deferential standard of review. *See Oldenburger v. Central States, S.E. & S.W. Areas Teamster Pension Fund*, 934 F.2d 171, 173 (8th Cir.1991).

discretion."[3]  Comment *d* then elaborates on this standard:

> *d. Factors in determining whether there is an abuse of discretion.*  In determining the question whether the trustee is guilty of an abuse of discretion in exercising or failing to exercise a power, the following circumstances may be relevant: (1) the extent of the discretion conferred upon the trustee by the terms of the trust; (2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; (5) the motives of the trustee in exercising or refraining from exercising the power; (6) the existence or nonexistence of an interest in the trustee conflicting with that of the beneficiaries.

This is essentially the deferential standard that we recently articulated in *Finley v. Special Agents Mutual Benefit Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir.1992).

■ Cox relies upon *Simmons v. Diamond Shamrock Corp.,* 844 F.2d 517, 522–23 (8th Cir.1988), in urging a stricter "reasonableness" standard of review.  However, we conclude that such a standard would be inconsistent with the Supreme Court's later decision in *Bruch.*  Trust law plainly does not permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees:

> It is not necessarily an "abuse of discretion" to make decisions under a discretionary power which the court believes that an ordinarily prudent trustee would not have made, or to fail to use the power as the court would have used it if the discretion had been granted to the court....  However, if the action of the trustee is extraordinarily imprudent or extremely unreasonable, the court is

likely to find that there has been an abuse of discretion.

George G. Bogert & George T. Bogert, The Law of Trusts and Trustees § 560, at 201–04 (rev.2d ed. 1980), *cited in Bruch,* 489 U.S. at 111, 109 S.Ct. at 954.  Thus, *Bruch* does not permit the rejection of "unreasonable" trustee decisions, except to the limited extent a reasonableness standard is rooted in established trust law principles.

## III.   An Issue of Plan Interpretation

■ In addition to defending the district court's decision, Cox presents us with a question of Plan interpretation.  Section 2.49 of the Plan provides in part:

> The determination as to whether a Member is Totally and Permanently Disabled shall be made on evidence that the Member is eligible for disability benefits under the Social Security Act in effect at the date of disability.

> \*      \*      \*      \*      \*      \*

> At the request of the Retirement Committee, a Disabled Member shall be required to produce evidence of the Member's continuing eligibility for disability benefits under the Social Security Act.

Cox argues that, under the plain language of § 2.49, he was entitled to benefits on the basis of the prior Social Security disability determination.  We disagree.

The Plan defines "Total and Permanent Disability" to mean:

> a physical or mental condition ... which can be expected to result in death or to be of long continued or indefinite duration and which totally and permanently prevents the Member from engaging in any occupation or employment for remuneration or profit.

This is a more restrictive definition than the definition of "disability" in the Social Security Act.  *See* 42 U.S.C. § 416(i)(1). For example, the Social Security Act does not require permanent disability; there-

---

**3.** Prior ERISA cases often applied an arbitrary and capricious deferential standard developed under the Labor Management Relations Act. Now that *Bruch* has liberated the ERISA standard from this LMRA analogy, *see* 489 U.S. at 109–10, 109 S.Ct. at 953, the applicable deferential standard should be the abuse of discretion standard from the law of trusts.  We suspect that this is a distinction without a difference, but it does serve to emphasize an important point, that these ERISA benefit denial cases involve the review of private rather than public agency decisionmakers.

fore, in *Lawrence v. Westerhaus,* 780 F.2d 1321, 1323 (8th Cir.1985), we affirmed the trustees' denial of plan benefits because there was substantial evidence that the claimant was not permanently disabled even though she was receiving Social Security disability benefits.

Although § 2.49 provides that a Plan participant must apply for Social Security disability benefits to be eligible for Plan disability benefits, it does not equate Social Security disability with Plan disability. Thus, we conclude that Mid–America's Plan gives the Retirement Committee some discretion to deny a claim despite a Social Security determination of disability. *See Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1286 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991).

## IV. Abuse of Discretion

The key issue before the Retirement Committee was not *whether* Cox was disabled, but *when* he had become disabled. On this issue, the evidence was conflicting.[4] On the one hand, Dr. Best, Cox' treating physician, had rendered largely supportive though inconsistent opinions on four different occasions: Cox "can probably return to normal activity" (February 1988); Cox "is totally and completely disabled" (September 1988); Cox "is disabled totally from his usual and standard occupation since May of 1987" (December 1988); and Cox "was disabled from [December 1985] from his usual and standard duties" (February 1989). And the Social Security ALJ had concluded that Cox was disabled beginning June 1987, though he had not explained his basis for choosing that onset date. On the other hand, Cox had requested a transfer when laid off and had applied for a heavy job seven months after termination, which suggest he was not then disabled. And an independent cardiologist had reviewed Cox'

file and found "no evidence of disability in July of 1987."

■ The district court concluded that the Retirement Committee had abused its discretion in relying upon the consulting physician's review of the medical file instead of the ALJ's determination and the attending physician's conclusory assertions. In so doing, the district court went beyond the deferential standard of review and substituted its own weighing of the conflicting evidence for that of the Plan's trustees. In other words, we agree with Mid–America that the district court in effect conducted an improper *de novo* review. *Compare Jett v. Blue Cross & Blue Shield of Ala., Inc.,* 890 F.2d 1137, 1139–40 (11th Cir. 1989).

■ However, we encounter serious problems in attempting to review the Retirement Committee's decision under the abuse of discretion standard. First, the reference to Social Security disability in § 2.49 raises questions of Plan interpretation, such as, under what circumstances does the Plan authorize the Retirement Committee to reach a different conclusion than the Social Security ALJ, and what weight should the Committee give to a relevant Social Security disability determination. The Committee's decision provides no clue as to how it interpreted the Plan in this regard, thus precluding judicial review of these important issues.

Second, the Retirement Committee's written notices to Cox gave only an unsatisfactory explanation of its decision.[5] The Committee's initial ruling was purportedly based upon the fact that Cox worked sixteen days beyond his Social Security disability onset date and then asked Mid–America to consider him for a transfer. After Cox appealed, the Committee's denial simply stated that he had not presented sufficient evidence. To reject Cox' considerable medical and Social Security evidence

**4.** We review the actions of ERISA fiduciaries such as the Retirement Committee based upon the evidence that was before them. *See Oldenburger,* 934 F.2d at 174.

**5.** Both the statute and its regulations require an ERISA trustee to provide the benefits claimant

with a written decision "setting forth the specific reasons for such denial, written in a manner calculated to be understood by the [claimant]." 29 U.S.C. § 1133; *see* 29 C.F.R. § 2560.503–1(h)(3).

for those reasons appears to be an abuse of discretion. In other words, the Committee never articulated how it resolved the crucial conflicts in the evidence before it—why it rejected the contrary Social Security disability determination, and what weight it gave to Dr. Best's various medical opinions and to the medical consultant's review of Cox' file.

We have previously noted that, in order to properly apply the deferential standard of review, a reviewing court must be provided the rationale underlying the trustee's discretionary decision. *See Richardson v. Central States, S.E. & S.W. Areas Pension Fund,* 645 F.2d 660, 664–65 (8th Cir. 1981). On this record, we conclude that the Retirement Committee has failed to provide a sufficient explanation of its rationale, in light of the Plan provisions that it was applying, to permit us to review its decision under the appropriate deferential standard of review. As we noted in *Richardson,* 645 F.2d at 664, reviewing courts should avoid unduly complicating the task of Plan trustees with unnecessary formal requirements. But when critical terms of the Plan are ambiguous and conflicting medical evidence could arguably support a decision either way, we believe that Congress in ERISA, as well as traditional trust law principles adopted in *Bruch,* require that ERISA trustees adequately explain the basis for their discretionary decisions.

Accordingly, we reverse the district court's award of benefits and attorneys fees in favor of Cox. The case is remanded to the district court with directions to remand to the Retirement Committee for reconsideration of Cox' application for disability benefits.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. I would affirm the judgment of the district court holding that the denial of disability benefits was an abuse of discretion.

In my view, the issue in this case was very narrow. Section 2.49 of the Plan provides: "The determination as to whether a Member is Totally and Permanently Disabled shall be made on evidence that the Member is eligible for disability benefits under the Social Security Act in effect at the date of disability."

The evidence was undisputed that Cox was eligible for disability benefits under the Social Security Act. The court today avoids application of this provision of the Plan by comparing the definition of disability in the Social Security Act with the definition of disability in the Plan. The chain of reasoning is ingenious, but it simply ignores the plain language of Section 2.49. Similarly, the committee's reliance on the report of the nonexamining physician and rejection of the opinion of Cox' treating doctor raise serious questions. Actually the report before the committee was written by a nurse with the title "Auditing Specialist," and simply quoted the opinion of an unnamed but board-certified physician advisor and closed by thanking the appellant's lawyer "for the opportunity to assist you in your cost containment efforts." On the basis of these facts, the district court concluded:

> This Court finds that the committee's decision to deny plaintiff disability benefits was not supported by substantial evidence and constitutes an abuse of discretion. To rely chiefly on the opinion of a medical doctor who did not examine the plaintiff, and to totally disregard credible contradictory evidence from the plaintiff's own treating physician, as well as the extensive examination of plaintiff done by the ALJ, is irrational and is an abuse of the discretion granted the committee by the Plan. Therefore, the committee's decision is reversed.

The district court did not err in its application of the correct standard of review. What the court today has done is to decide the issue de novo based upon its interpretation of several provisions of the Plan. In my view the court errs in doing so. We should conclude that the district court did not err in its determination that the denial was not supported by substantial evidence and was an abuse of discretion. I would affirm the judgment of the district court.

## ON PETITION FOR REHEARING

June 11, 1992.

The petition for rehearing is denied. The panel majority in reversing the award of attorney's fee under 29 U.S.C. § 1132(g)(1) did not intend to preclude the district court from taking up the entire attorney's fee question at any subsequent stage of the proceedings.

Circuit Judge JOHN R. GIBSON would grant the petition for rehearing for the reasons stated in his dissenting panel opinion.