Bruce J. BERNARDS, Plaintiff–Appellee,

v.

UNITED OF OMAHA LIFE
INSURANCE COMPANY,
Defendant–Appellant.

Nos. 93–1341, 93–1468.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 24, 1993.

Decided Feb. 25, 1993.

Stephen Michael Bressler, Phoenix, AZ, argued (John P. Frank, Steven Labensky and Stephen M. Bressler, on the brief), for defendant-appellant.

Paul D. Tierney, Minneapolis, MN, argued, for plaintiff-appellee.

Before LOKEN, Circuit Judge, LAY and HEANEY, Senior Circuit Judges.

PER CURIAM.

United of Omaha Life Insurance Company ("United") appeals a district court order granting summary judgment in favor of Bruce J. Bernards in this suit to enforce his rights under an ERISA health benefits plan. *See* 29 U.S.C. § 1132(a)(1)(B). The district court concluded that United's denial of Bernards's request for health insurance benefits was arbitrary and capricious and ordered United to provide the benefits in question. Because the parties agree that Bernards's medical condition is rapidly deteriorating and the outcome of this suit may affect the medical treatment he is afforded, we granted United's request for an expedited appeal. We now conclude that the record before the district court was insufficient to finally determine whether United's denial of benefits was arbitrary and capricious or an abuse of discretion. Accordingly, we reverse and remand.

In September 1992, Bernards was diagnosed with mediastinal germ cell carcinoma with pulmonary metastases. After standard dose chemotherapy proved unsuccessful, Bernards's treating physician referred him to Dr. E. Randolph Broun, director of the Bone Marrow Transplant Unit at Indiana University School of Medicine, who proposed to treat Bernards with high-dose chemotherapy with autologous bone marrow transplantation ("HDC–ABMT"). Bernards then applied to United for an advance determination that this costly treatment procedure would be covered under United's group health insurance policy issued to the St. Paul Warehouse Employees' Welfare Fund, in which Bernards is a participant. The group health policy is an employee benefits plan governed by ERISA.

The policy expressly provides that, "Benefits are not provided for ... any expense or charge for services or supplies which are ... for treatment which is experimental, investigative or not proven safe and effective." On December 8, 1992, United denied coverage, explaining:

> Our Medical Director has reviewed the documentation provided by Dr. Broun. The information included a copy of the Informed Consent Form, the protocol document, literature published in medical journals, and Dr. Broun's letters.... Our Medical Director also completed a literature search.
>
> Based on this information, it is our Medical Director's opinion that the proposed procedure is investigational.

Consistent with the claims procedure set forth in the Plan, Bernards appealed this decision to the Plan's Board of Trustees which, after a hearing, requested that United reconsider its denial of coverage. On December 15, 1992, United again denied coverage.

Rather than submit his claim to binding arbitration, as provided in the Plan, Bernards then commenced this action in state court. United removed. Because Bernards's condition was rapidly deteriorating, and because the Indiana medical team would not undertake the HDC–ABMT treatment without assurance of payment, both sides moved for summary judgment.

Affidavits were submitted to the district court by Dr. Roger Johnson, Bernards's treating physician; Dr. Broun; and Dr. Robertson Parkman, head of the Division of Research Immunology and Bone Marrow Transplant at Children's Hospital in Los Angeles, California, on behalf of Bernards; and by Dr. Kenneth L. McDonough, Senior Vice President and Corporate Medical Director of United; and Dr. George L. McCann, second Vice President and Medical Director of Claims, on behalf of United. Medical literature relating to the condition and its treatment was also submitted by the parties. United argued that its decision that the proposed HDC–ABMT treatment is investigative within the meaning of the insurance policy was not arbitrary and capricious based upon the information before its medical director. Bernards relied upon the affidavits of Dr. Johnson, Dr. Broun, and Dr. Parkman reciting that HDC–ABMT for patients in Bernards's condition has become "the standard of care," "the best available therapy," "the treatment of choice," "is not experimental and is the commonly, customarily recognized treatment," and is therefore no longer experimental or investigative.

The district court granted Bernards's motion for summary judgment. The court explained that United "provided little if any explanation for its denial of coverage." Relying upon Bernards's physician affidavits and decisions in other cases which may or may not have involved different policy language and different types of cancer, the court concluded that "significant evidence exists that such medical procedure should be covered under the terms of the policy." Therefore, United's denial of coverage was arbitrary and capricious and it "is obligated to provide benefits for the prescribed treatment for plaintiff."

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989), the Supreme Court stated that a deferential standard of review is appropriate when an ERISA benefit plan "gives the administrator or fiduciary authority to determine eligibility for benefits or construe the terms of the plan." In this case, the Plan grants United:

> the discretion and final authority to construe and interpret the Policy. This means that United has the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits within the terms of the policy as interpreted by United.... United's interpretation of the Policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons.

This grant of discretion requires that the deferential standard of judicial review be applied to United's determination that the HDC–ABMT treatment "is experimental, investigative or not proven safe and effective." *See Cox v. Mid–America Dairymen, Inc.*, 965 F.2d 569 (8th Cir.1992). We review the district court's application of the deferential standard de novo.

To apply the deferential standard of review, "a reviewing court must be provided with the rationale underlying the trustee's discretionary decision." *Cox*, 965 F.2d at 574. We agree with the district court that United's cryptic letters denying benefits failed to provide a sufficient rationale to permit judicial review of its decision. The district court erred, however, in going on to conduct an independent, effectively de novo review of the evidence. In particular, the district court erred in devising its own interpretation of the policy term, *investigative*.[1] As we held in *Cox*, when the plan administrator fails to give an adequate explanation of how it has construed the plan and applied it to the facts of a particular claim, the reviewing court must seek a fuller explanation from the administrator and then apply the deferential standard of review on an adequate record to determine whether the decision "is extraordinarily imprudent or extremely unreasonable." 965 F.2d at 572, *quoting* George C. Bogert & George T. Bogert, *The*

---

**1.** As we have previously held, the common rule of construction that ambiguous language in an insurance policy is construed against the insurer has no place in the construction of an ERISA plan. *Finley v. Special Agents Mut. Ben. Ass'n, Inc.*, 957 F.2d 617, 619 (8th Cir.1992).

*Law of Trusts and Trustees* § 560, at 201–04 (rev. 2d ed. 1980).

■ After reviewing the insurance plan, the affidavits, and the medical literature, we are not satisfied that the record has been developed to a point that an informed decision under the deferential standard of review can be made. In addition to lacking an adequate explanation by United of its decision, oral argument before this court outlined a number of areas of apparent disagreement between the parties, which include, but are not limited to, the following: If a treatment is considered noninvestigative for one type of germ cell cancer, is it therefore noninvestigative for other germ cell cancers? Specifically, is the distinction between testicular and mediastinal germ cell cancer significant in determining whether HDC–ABMT is investigative in treating the latter? Are all Phase II treatments considered investigative, both by United and by the medical, or perhaps oncological, profession? Are all cancer treatments in universities performed pursuant to protocols and are they therefore uniformly considered investigative, either by United or by the medical or oncological profession? When a patient does not satisfactorily respond to regular chemotherapy, as in this case, does the standard of care then become use of an investigative treatment? What possible definitions of *investigative* include HDC–ABMT treatment in this case? Would those definitions include, for example, all university-based treatments of any type of cancer or specifically of any germ cell cancer? What are the probable results of this treatment?

Bernards supplemented the affidavits submitted on his behalf by stating that twenty-six other insurance companies have provided coverage for the procedure for other patients under Dr. Broun's supervision. In response, United indicated that the language of those insurance policies differed in material respects. Neither party has submitted copies of the policies.

In *Cox* we remanded to the district court with directions that the case be remanded to the plan administrator. This case is more complicated, however, because the emergency situation has caused the parties to bypass the binding arbitration procedure provided in the Plan and to seek immediate judicial review. To conduct meaningful review in these circumstances, the district court must obtain from United a further explanation of its decision, afford Bernards the opportunity to present evidence challenging the decision (he surely would have presented evidence had he appealed the decision to an arbitration panel), and then apply the deferential standard of review to the expanded record. When the district court applies the deferential standard on remand, we agree with Bernards that any conflict of interest created by United's status as insurer "must be weighed as a factor in determining whether there is an abuse of discretion." *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956.

Therefore, the judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion. In developing an expanded record, we direct the district court to work with the parties in scheduling the depositions of the doctors who have submitted affidavits with the objective of resolving perceived conflicts to the extent possible. It is obvious that these depositions must be scheduled promptly and transcripts of the depositions be made immediately available to the district court. It is also essential that if either party intends to rely on another insurance company's coverage or exclusion from coverage of this treatment, it must submit information to the district court both with respect to the language contained in these policies and the specific circumstances of coverage or exclusion. Upon receipt of the depositions, policies, and such other materials as the parties shall timely submit, the district court shall set forth in detail its reasons for granting or denying summary judgment in accordance with this opinion.