Howard E. COX, Plaintiff–Appellant,

v.

MID–AMERICA DAIRYMEN, INC.; Mid–America Dairymen, Inc. Retirement Plan; The Northern Trust Company, Defendants–Appellees.

No. 93–1822.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1993.

Decided Dec. 30, 1993.

Gary T. Nelms, Springfield, MO, argued, for plaintiff-appellant.

Wayne H. Hoecker, Kansas City, MO, argued, for defendants-appellees.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Howard E. Cox, a former employee of Mid–America Dairymen, Inc., sought disability benefits under Mid–America's retirement plan. Mid–America's Retirement Committee denied his request, concluding that Cox failed to demonstrate a qualifying disability during his period of eligibility. Cox challenged the Committee's decision, and the district court granted summary judgment in his favor. A divided panel of this court reversed and remanded for additional proceedings, concluding that the district court applied an inappropriate standard of review. The Committee affirmed its first decision. The district court[1] rejected Cox's subsequent challenge, ordering summary judgment for Mid–America. Because we must apply a deferential standard of review and must abide by this court's first decision in this case, we affirm.

This court conducted an extensive analysis of the factual circumstances surrounding Cox's request for plan benefits in the first decision in this case. *Cox v. Mid–America Dairymen, Inc.*, 965 F.2d 569 (8th Cir.1992). Thus, we include only a limited discussion of the facts. Cox suffered a heart attack in December 1985. After an angioplasty procedure, he returned in January 1986 to his job as a full-time maintenance worker at Mid–America's milk plant, where he continued working until a plant closing forced his layoff in June 1987. After failing in his attempt to obtain a transfer to another location, Cox elected to terminate his employment relationship and related recall rights on July 28, 1987. This permitted him to receive certain funds deposited with Mid–America's pension plan. According to Cox, he suffered from a "total and permanent" disability before his layoff. Nonetheless, he continued to pursue other job opportunities, and applied for a position involving heavy labor in February 1988. Despite these efforts, he failed to obtain any employment after his layoff.

In March 1988, Cox applied for Social Security disability benefits. He claimed an onset date of June 2, 1987, which the Administrative Law Judge accepted without comment. Cox then applied for disability benefits under Mid–America's Retirement Plan. Mid–America's Retirement Committee denied Cox's request, relying in part on Cox's desire to continue working after his asserted onset date. Cox sought review in the district court.

The district court granted summary judgment in favor of Cox, stating that the Committee abused its discretion by:

> rely[ing] chiefly on the opinion of a medical doctor who did not examine the plaintiff, and ... totally disregard[ing] credible contradictory evidence from the plaintiff's own treating physician, as well as the extensive examination of plaintiff done by the [Social Security Administrative Law Judge].

On appeal, however, a divided panel of this court reversed the district court's order, holding that the court improperly conducted a de novo review of the record, instead of applying the appropriate abuse of discretion standard. This court rejected Cox's claim that the administrative law judge's prior adjudication and findings were dispositive, concluding the Plan's "totally and permanently disabled" language creates a stricter standard than does the same language in the Social Security Act. However, because the Committee failed to adequately explain its

---

1. The Honorable Russell G. Clark, Senior Judge, United States District Court for the Western District of Missouri.

denial, we remanded to the district court with directions to remand to the Committee for reconsideration.

After reconsideration, the Committee again denied Cox's request for benefits. The Committee concluded that Cox failed to show he was totally and permanently disabled on or before July 28, 1987—the date he terminated his right to benefits under the Plan. In so deciding, the Committee rejected certain statements of Dr. John Best, Cox's treating cardiologist. Dr. Best's statements included a finding that Cox was "disabled from his usual [and] standard occupation since May of 1987." The Committee found that "Dr. Best's statements as to the date were largely supportive although inconsistent opinions and, therefore, not dispositive." Among the conflicting statements were Dr. Best's February 1988 report stating that Cox was doing "relatively well" and "[could] probably return to normal activity but again, still should avoid extremes of heat and cold and extremes of isometric exertion." Cox's clinical records, according to the Committee, cast further doubt on his claimed date of onset. The first post-termination clinical records, prepared three months after Cox terminated his employment relationship, assessed his position as "stable." The Committee rejected the finding of an earlier onset date in Cox's Social Security case, stating that the Plan's disability definition is stricter than the applicable Social Security standard. Moreover, the Committee emphasized that the issue before the administrative law judge was *whether* Cox was disabled, not *when* he became disabled. The administrative law judge merely accepted Cox's asserted onset date without comment. In reaching its decision, the Committee rejected Cox's supplemental medical evidence and statements of his co-workers.

Cox once again attacked the Committee's denial of benefits in the district court. Reviewing the Committee's action under an abuse of discretion standard, the district court ordered summary judgment in favor of Mid–America.

Cox contends the district court erred in granting summary judgment for Mid–America. He contends we should reverse the district court's order because the Committee abused its discretion in determining that he was not disabled during his eligibility period. Insofar as the Committee determined otherwise, he argues, the Committee applied an unduly restrictive interpretation of what constitutes "total and permanent disability" under the Plan. After carefully considering his arguments, we affirm.

■ We review a district court's order granting summary judgment de novo. *United States Glass ex rel v. Medtronic, Inc.,* 957 F.2d 605, 607 (8th Cir.1992). This does not mean, however, that we may make our own determination of whether or not Cox was disabled on June 2, 1987. Mid–America's Retirement Plan states:

> In case of any factual dispute hereunder, the Retirement Committee shall resolve such dispute giving due weight to all evidence available to it. The Retirement Committee shall interpret the Plan and shall determine all questions arising in the administration, interpretation and application of the Plan.

Section 6.03. When a plan contains such language, a reviewing court must apply a "deferential standard of review." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). This court specifically held that the district court should review Mid–America's Plan under a "deferential abuse of discretion" standard. *Cox,* 965 F.2d at 571; *see Bolling v. Eli Lilly & Co.,* 990 F.2d 1028 (8th Cir.1993). The "Plan language requires that a deferential abuse of discretion standard be applied both to the Retirement Committee's interpretations of the Plan and to its fact-based disability determinations." *Cox,* 965 F.2d at 571. This highly deferential standard reflects the fact that "courts are hesitant to interfere with the administration of a pension plan." *Bueneman v. Central States Southeast & Southwest Areas Pension,* 572 F.2d 1208, 1209 (8th Cir.1978). Accordingly, we will affirm a reasonable interpretation of a plan. *Finley v. Special Agents Mut. Benefit Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir. 1992).

■ Cox attacks the Committee's application of the Plan's "total and permanent" disability standard. He contends the Committee applied an overly restrictive interpretation of this language, as evidenced by the administrative law judge's conflicting determination under identical language in the Social Security Act. In essence, Cox argues the Committee would have found him to be disabled prior to the effective date of his termination but for its application of an overly rigid disability definition. We subject the Committee's interpretation of this language to the same deferential standard of review described above. This court has already expressly stated that the Plan contains a "more restrictive definition than the definition of 'disability' in the Social Security Act." *Cox,* 965 F.2d at 572 (citing 42 U.S.C. § 416(i)(1) (1988)). The Plan's language allows the "Committee some discretion to deny a claim despite a Social Security determination of disability." *Id.* According to the Plan, "total and permanent disability" means:

> a physical or mental condition ... which can be expected to result in death or to be of long continued or indefinite duration and which totally and permanently prevents the Member from engaging in any occupation or employment for remuneration or profit.

In order to decide whether the Committee abused its discretion by denying coverage under this standard, we must consider the evidence supporting its determination.

As stated in our earlier opinion, the "key issue before the Retirement Committee was not *whether* Cox was disabled, but *when* he had become disabled." *Cox,* 965 F.2d at 573 (emphasis in original). After an extensive examination, this court found that "the evidence was conflicting." *Id.* This court agreed with the Committee that Dr. Best's opinions were "inconsistent." *Id.* The additional evidence supplied by Cox to the Committee on rehearing has not changed the fact that the evidence is conflicting. Cox worked until his layoff, then requested a transfer and continued to seek employment before he severed his relationship with Mid–America. Three months after doing so, he was diagnosed as "stable." In February of the following year, Dr. Best told Cox he could "probably return to normal activity." In light of this evidence, we cannot say that the Committee abused its discretion in determining that Cox failed to meet the Plan's disability standard during his coverage period. We have considered Cox's remaining arguments to the contrary and find them without merit.

Accordingly, we affirm.