Mary **GLENN, et. al., Plaintiffs,**

v.

**THE LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. 97–0268–CV–W–9.**

United States District Court, W.D. Missouri, Western Division.

Nov. 15, 1999.

Lonny L. Walters, Law Offices of G. Spencer, Miller, Kansas City, MO, for Plaintiffs.

Richard N. Bien, Lathrop & Gage L.C., Kansas City, MO, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, Chief Judge.

Plaintiffs are the beneficiaries of any proceeds payable under an accidental death insurance policy covering decedent Robert Jackson. Plaintiffs assert three claims against defendant The Life Insurance Company of North America (LIC-NA). In Count I, plaintiffs assert a claim for breach of contract, in Count II, plaintiffs allege vexatious refusal to pay insurance proceeds, and in Count III, plaintiffs assert a claim under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132.

Defendant moves for summary judgment arguing that 1) ERISA preempts plaintiffs' state law claims for breach of contract and vexatious refusal to pay and 2) that there was substantial evidence to support the decision to deny benefits and that the decision was not arbitrary or capricious.

### I.

### STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment

shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States,* 600 F.2d 725, 727–28 (8th Cir.1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. 317, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits,

depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 477 U.S. 242, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson,* 477 U.S. 242, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 477 U.S. 242, 106 S.Ct. at 2512.

## II.

## FACTS

Based on the parties' pleadings, deposition testimony, answers to interrogatories, and admissions, the following facts are undisputed or, if disputed and plaintiffs properly presented facts supporting their version of disputed facts, are presented here in the light most favorable to plaintiffs.

Decedent Robert Jackson was an employee of Hallmark Cards, Incorporated (Hallmark). As an employee of Hallmark, Jackson had an accidental death and dismemberment policy issued by LICNA.

On January 10, 1995, Jackson was found dead in his apartment from a self-inflicted gunshot wound to the head.

Plaintiffs filed a claim for benefits on February 14, 1995. LICNA denied the claim on May 25, 1995, stating that

"we did not find evidence of treatment for sanity-related conditions, or indications that Mr. Jackson was not sane at the time of his death.

Since the policy, OK 6226 excludes payment for losses which result from intentionally self-inflicted injuries, we must deny you [sic] claim for Accidental Death benefits at this time."

On July 19, 1995, plaintiffs Mary Glenn and William Jackson sent a letter requesting an administrative review of the decision to deny benefits. In the letter, Glenn and Jackson stated their belief that Robert Jackson's "mental state was unsound, and that conditions of his employment caused his death." Plaintiffs also stated that "[n]ames of witnesses and statements can be provided upon request."

On July 27, 1995, defendant sent a letter to plaintiffs asking for "the names and addresses of the witnesses you believe might support your assertion regarding Mr. Jackson's mental state, and workplace problems, including any statements you may already have." Plaintiffs were also asked to explain the basis for their claim that Robert Jackson's mental state was unsound. Similar requests were made on September 28, 1995, October 23, 1996, and October 24, 1996. Plaintiffs made no response to defendant's requests prior to this suit being filed.

Plaintiffs filed suit in Jackson County Circuit Court on December 21, 1996, alleging breach of contract and vexatious refusal to pay. Defendants removed the case to this court on March 7, 1997.

On joint motion of the parties, this case was stayed for further review of plaintiffs' claim. During this time, plaintiffs submitted additional information for defendant to review.

Plaintiffs asked Dr. William Logan to conduct an investigation and give an opinion on the mental condition of Robert Jackson at the time of his death. Based on his investigation, Dr. Logan concluded that Jackson's "preoccupation with killing himself continued for some time prior to his death and constituted a 'morbid impulse' which he could no longer had the strength of will to resist." In Dr. Logan's opinion, Jackson "could not exercise a rational judgment on the question of life or death."

Defendant also sought an expert opinion on Jackson's mental condition at the time he died. Dr. Bruce Harry concluded that "[t]o a reasonable degree of medical certainty, that, on balance, at the time he took his own life, Mr. Jackson was not insane within the meaning of the Missouri standard as expressed in *Garmon v. General American Life Insurance Company,* 624 S.W.2d 42 (Mo.App. E.D.1981)."

LICNA again denied plaintiffs claim on March 20, 1998, stating that "[t]he evidence in the documents listed above supports the fact that Robert E. Jackson died as a result of suicide from a self-inflicted gunshot wound to the head, while sane. The evidence in the file does not support the allegation that Jackson was insane."

Plaintiffs filed an amended petition on September 4, 1998, adding a claim under ERISA.

## III.

### DEFENDANT'S ARGUMENT THAT ERISA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS

Defendant argues that plaintiffs' state law claims for breach of contract and vexatious refusal to pay are preempted by the remedies available under ERISA. Plain-

tiffs respond that "[d]efendant has made no showing, other than simply stating it as a purported fact, that the policy in this case is part of an 'employee welfare benefit plan', [sic] as defined by ERISA."

On May 9, 1997, the parties filed with the court a joint motion to stay this case to allow defendant an opportunity to further review plaintiffs claim. In the motion, which was signed by an attorney for the plaintiffs, the parties stated they "agree that the plan at issue is governed by ERISA, 29 U.S.C. § 1001 (et seq.) and plaintiffs' claims are regulated by ERISA." Based on the plaintiffs' statement to the court that ERISA governs these claims, plaintiffs' state law claims are preempted by ERISA.

■ Even if plaintiffs had not previously conceded that the plan is governed by ERISA, I would conclude that the policy in question was part of an employee welfare benefit plan and that ERISA preempts the breach of contract claim and the vexatious refusal to pay claim. *See Molasky v. Principal Mutual Life Insurance Co.*, 149 F.3d 881, 884 (8th Cir.1998) (ERISA preempts Missouri state law claim for breach of contract); *Vickery v. United Medical Resources, Inc.*, 43 F.3d 1208, 1209 (8th Cir.1994) (ERISA preempts Missouri state law claim for vexatious refusal to pay); *In Re Life Insurance Co. of North America*, 857 F.2d 1190, 1195 (8th Cir.1988) (same).

## IV.

### STANDARD FOR REVIEWING DECISIONS GOVERNED BY ERISA

■ Defendant argues that this court's review of the administrator's decision should be limited to the record before LICNA at the time of its decision and should be based on an arbitrary and capricious standard. Plaintiffs respond that the court should apply "a more penetrating standard of heightened scrutiny" because, as both plan administrator and the insurer of the benefit plan, LICNA has a conflict of interest.

The parties do not, however, make a distinction between the standard for reviewing the interpretation of plan language and the standard for reviewing factual determinations made by the plan administrator. Because the dispute in this case is over a factual determination made by defendant, the standard for reviewing factual determinations must be determined.

In the Fifth Circuit, a plan administrator's factual determinations are reviewed for abuse of discretion. *See Pierre v. Connecticut General Life Insurance Co.*, 932 F.2d 1552, 1562 (5th Cir.1991), *cert denied*, 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991). Other circuits review factual determinations de novo, unless the benefit plan gives the plan administrator discretionary authority. *See Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176 (3rd Cir.1991).

Apparently, the Eighth Circuit Court of Appeals would follow the Fifth Circuit and review a plan administrator's factual determinations for abuse of discretion. In *Cox v. Mid–America Dairymen, Inc.*, 965 F.2d 569, 571 n. 2 (8th Cir.1992), the court commented that "[o]ur circuit apparently sided with those adopting the deferential standard of review." *See also, McCourtney v. McKechnie Investments, Inc.*, 976 F.Supp. 1259, 1262 (D.Minn.1997) ("The dicta in *Cox* is helpful in suggesting the likely future direction of the Eighth Circuit on the issue."). *See also Vesaas v. Hartford Accident & Indemnity Co.*, 124 F.3d 209 (8th Cir.1997) (unpublished decision re-affirming decision in *Cox* ).

However, in *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160–61 (8th Cir.1998), the court held that, when the insurer also serves as the plan administrator, a less deferential standard of review may be appropriate. "To obtain a less deferential review, [the plaintiff] must present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the

plan administrator's fiduciary duty to [the plaintiff]." *Id.*

I am not persuaded that a less deferential standard of review than abuse of discretion is warranted in this case. Although acting as both insurer and plan administrator creates a potential conflict of interest for LICNA, plaintiffs have not presented facts showing a serious breach of LICNA's fiduciary duty to the plaintiffs.

Plaintiffs argue that the expert relied on by defendant in denying plaintiffs' claim on March 20, 1998, was hired after this suit was filed and, therefore, "cannot reasonably be called 'independent.'" As in *Woo*, where a similar argument was made, I interpret this as an allegation that LICNA did not use proper judgment or thoroughly investigate plaintiffs' claim. *See Woo*, 144 F.3d at 1161.

In *Woo* the court concluded that the defendant failed to use proper judgment by not seeking expert review of the plaintiff's claim when it "was confronted with medical evidence of an uncommon disease" and the opinions of two doctors stating that the plaintiff was disabled. *Id.* at 1161. Here, when confronted with Dr. Logan's conclusion that Jackson was insane at the time he committed suicide, defendant sought the expert opinion of Dr. Harry.

Plaintiffs also argue that "defendant admittedly failed to follow ERISA guidelines in reviewing plaintiffs' claims . . . ." This statement refers to the fact that defendant did not perform a review of plaintiffs' claim after the letter requesting administrative review and did not, within 120 days, inform plaintiffs why the appeal was being denied. Taylor depo. at 87, lines 9–16; 88, lines 13–24; 89, line 1. However, within 120 days defendant twice requested that plaintiffs furnish additional information supporting plaintiffs' position that Robert Jackson was insane at the time he committed suicide. July 27, 1995, letter to Mary Glenn & William Jackson; September 28, 1995, letter to Mary Glenn & William Jackson. Plaintiffs did not respond to either letter.

Therefore, plaintiffs have not presented facts supporting the conclusion that a conflict of interest or serious procedural irregularity caused a serious breach of LICNA's fiduciary duty. *See Woo*, 144 F.3d at 1160–61. Not having satisfied Woo's "two-part gateway requirement" for a more stringent review than abuse of discretion, the abuse of discretion standard will be used to review factual determinations made by defendant LICNA.

**V.**

**DEFENDANT'S ARGUMENT THAT REVIEW BY THIS COURT SHOULD BE LIMITED TO THE ADMINISTRATIVE RECORD**

Defendant argues that "[r]egardless of the standard of review employed by the Court on the question of plaintiffs' entitlement to benefits, plaintiffs should be precluded from offering any evidence that was not submitted to defendant during the claim review process and prior to the time the benefits decision was made." Plaintiffs respond that defendant's motion to limit review to the administrative record "is premature at best and should not even affect the Court's consideration of the motion for summary judgment."

On the issue of whether defendant's decision to deny benefits was an abuse of discretion, the parties have not submitted any material that was not contained in the administrative record used by defendant in making its final decision. Therefore, it is not necessary to determine whether testimony, documents, or other materials not included in the administrative record should be considered.

**VI.**

**ARGUMENT THAT ADMINISTRATOR'S DECISION SHOULD BE AFFIRMED AS A MATTER OF LAW**

Defendant argues that summary judgment on plaintiffs' ERISA claim is

proper because defendant's "decision was reasonable and supported by the record." Plaintiffs respond that a factual dispute remains over the mental state of Robert Jackson at the time of his death and that this dispute prohibits summary judgment in defendant's favor.

Plaintiffs are correct that conflicting facts have been presented about the mental condition of Robert Jackson when he committed suicide. However, the issue in this proceeding is whether there is a dispute of material fact over whether defendant abused its discretion when it determined that Jackson was sane when he died.

The final decision to deny benefits was made by John Taylor. Taylor had been a senior life examiner in the claims division since 1991. Taylor depo. at 23–24. In reaching the decision to deny benefits, Taylor reviewed and relied upon the entire claim file, the insurance policy, a Hallmark employee benefits brochure entitled "Career Rewards," medical records from Dr. Nancy Russell, the January 10, 1995, Gladstone Department of Public Safety Incident and Crime Report, the January 10, 1995, Medical Examiner's Report and Supplemental Report # 95008, the January 10, 1995, autopsy report from Dr. Bonita Peterson, the January 11, 1995, toxicology report, the September 30, 1997, report by Dr. Logan, affidavits from Pat Blair, Carl Starkey, Debbie Jackson, Marsha Gardner, and Brian Middleton, and the March 2, 1998, report by Dr. Harry. Taylor depo. at 137, lines 8–13; Taylor letter to Walters dated March 20, 1998, at 2.

In support of the position that Jackson was insane when he committed suicide, plaintiffs point to the report prepared by Dr. Logan and the material in the claim file cited in Logan's report.

Just because there are conflicting expert conclusions and just because there are facts that could support conflicting conclusions does not create an issue for trial over whether defendant abused its discretion when it determined Jackson was sane at the time of his death. Defendant chose to rely on Dr. Harry's report that found Jackson was sane and plaintiffs have not demonstrated that doing so was an abuse of discretion. Defendant "did not abuse its discretion merely because there was evidence before it that would have supported an opposite decision." *Bolling v. Eli Lilly & Co.*, 990 F.2d 1028, 1029–30 (8th Cir.1993).

Also, the plaintiffs' arguments that LICNA had a conflict of interest, that LICNA only sought expert advice after this lawsuit was filed, and that LICNA did not review the claim as promptly as plaintiffs believe it should have been, do not alter the conclusion that LICNA did not abuse its discretion.

Therefore, defendant's motion for summary judgment will be granted.

## VII.

**PLAINTIFFS' ARGUMENT THAT MO. REV.STAT. § 376.620 PREVENTS THE DEFENDANT FROM RAISING SUICIDE AS A DEFENSE TO COVERAGE**

Plaintiffs argue that defendant has not shown that Jackson contemplated suicide when he applied for the accidental death policy. Plaintiffs contend that, under Mo.Rev.Stat. § 376.620, "without such a showing, defendant has no defense to coverage."

Defendant responds that "this statute does not affect the defense that there is no accident under an accidental death policy where an insured commits suicide while not insane (sane)."

Mo.Rev.Stat. § 376.620 states that

In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy,

and any stipulation in the policy to the contrary shall be void.

The insurance policy at issue in this case provided that

We agree to pay benefits for loss from bodily injuries:

a. caused by an accident which happens while an insured is covered by this policy; and

b. which, directly and from no other causes result in a covered loss. (See Description of Coverage.)

We will not pay benefits if the loss was caused by:

a. sickness, disease or bodily infirmity; or

b. any of the Exclusions listed on page 2.

The "Exclusions" section of the policy states:

No benefits will be paid for loss resulting from:

1. Intentionally self-inflicted injuries, or any attempt thereat, while sane or insane (in Missouri, while sane).

In *Miller v. Home Ins. Co.*, 605 S.W.2d 778, 780 (Mo.1980), plaintiff conceded that "suicide while sane" has not been regarded in Missouri as an accidental bodily injury under an accident insurance policy. However, plaintiff contended that suicide while sane was covered by the policy in that case because an attempt was made to exclude it "[r]easoning on the premise that if excluded it was covered, plaintiff then asserts the exclusion is invalidated by our suicide statute, § 376.620." *Id.*

The court rejected the plaintiff's argument.

"It is settled law that the phrase "accidental bodily injury" does not include suicide while sane, see Couch on Insurance 2d, § 41.196 and numerous Missouri cases cited, and we conclude that suicide while sane was not a covered risk within this group policy of insurance before us. As there was no coverage, the effect of the exclusionary clause and of

§ 376.620 are irrelevant to a determination of the cause."
*Id.* at 780–81.

Here, plaintiffs are claiming benefits under an accident policy. Because Jackson was determined to have been sane at the time of his death, § 376.620 does not control the outcome of this case.

## VIII.

## CONCLUSION

Accordingly, it is ORDERED that:

1) defendant's Motion for Summary Judgment (Doc. 40) is granted;

2) plaintiffs' claim in Count I for breach of contract is dismissed with prejudice, at plaintiffs' costs;

3) plaintiffs' claim in Count II for vexatious refusal to pay is dismissed with prejudice, at plaintiffs' costs; and

4) plaintiffs' claim in Count III for wrongful denial of benefits under ERISA is dismissed with prejudice, at plaintiffs' costs.