**Fred M. BRANDOW, Plaintiff,**

v.

**Robert MILANO, Plan Administrator, National Elevator Industry Pension Plan and Craig W. McKeown, Chairman, Board of Trustees of the National Elevator Industry Pension Plan, Defendants.**

No. 91–0352–CV–W–8.

United States District Court, W.D. Missouri, W.D.

Aug. 31, 1993.

William H. Norton, Norton & Norton, P.C., Kansas City, MO, for plaintiff.

Richard L. Calcara, and G. Gordon Atcheson, Blake & Uhlig, P.A., Kansas City, MO, for defendants.

### ORDER

STEVENS, Chief Judge.

This case is before the court on cross-motions for summary judgment. For reasons which follow, plaintiff's motion for summary judgment is granted and defendant Milano's motion is denied.

## I

Plaintiff Brandow originally filed his petition on March 7, 1991 in the Circuit Court of Clay County seeking a judgment declaring his rights under the National Elevator Industry Pension Plan ("the Plan"). Specifically, plaintiff asserted in his petition that he is entitled to a disability pension but is receiving an early retirement benefit instead. He filed the action against both Robert Milano, the day-to-day administrator of the National Elevator Industry Pension Fund ("Fund"), and Craig McKeown, a former member of the Board of Trustees. Defendant McKeown apparently has never been served and is not a proper party since he has not been a Trustee since 1987.

Defendant Milano removed the case to this court on April 17, 1991 pursuant to § 502 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132. The court then denied plaintiff's motion to remand to state court, ruling that plaintiff's state law claim was preempted under § 514(a) of ERISA. The court recharacterized plaintiff's claim as one challenging a denial of benefits under § 502(a). Eventually, plaintiff and defendant Milano agreed that this dispute could be fully resolved on cross-motions for summary judgment, which is how it presently stands.

In reaching its decision on the cross-motions the court has consulted the following documents: defendant Milano's motion for summary judgment filed November 15, 1991; plaintiff's suggestions in opposition to summary judgment filed December 10, 1991; defendant Milano's reply suggestions; defendant Milano's pretrial statement of material facts and issues of law; plaintiff's motion for summary judgment; plaintiff's suggested findings of fact and conclusions of law; defendant Milano's suggestions in opposition to plaintiff's motion for summary judgment and plaintiff's suggested findings of fact and conclusions of law; and, plaintiff's suggestions in opposition to defendant's suggestions re plaintiff's motion for summary judgment.

From these documents, the court gleans the following facts: The Fund is established and maintained pursuant to the Restated Agreement and Declaration of Trust between

the International Union of Elevator Constructors ("IUEC") and the National Elevator Industry, Inc. ("NEII"), the Agreement between IUEC and the Otis Elevator Company ("Otis Agreement"), and the Standard Agreement between IUEC and NEII ("Standard Agreement"). The Standard Agreement and Otis Agreement govern the amount employers must contribute to the Fund on behalf of their employees and are renegotiated periodically. The Standard Agreement also establishes a Board of Trustees, made up of equal numbers of management and union representatives.[1] The Restated Agreement and Declaration of Trust establishes the powers of the Board of Trustees, one of which is to adopt a plan of pension benefits. This resulted in adoption of the Plan. The Plan and subsequent amendments adopted by the Trustees govern the terms, conditions and amount of benefits provided to Fund participants and their beneficiaries. The 1984 NEI Pension Plan and its amendments govern the instant case.

In 1982, plaintiff was working in the elevator industry and was covered by the Plan. He had been employed in the elevator industry since 1958. According to plaintiff's application for early retirement benefits, on May 23, 1982, plaintiff was laid off from his job. On August 31 of that year, plaintiff turned 55–years–old and became eligible for an early retirement pension under the Plan. On October 4, 1982, plaintiff filed an application for early retirement benefits, which was granted.

His monthly pension was figured using a formula set forth in the Plan which calculates the number of years plaintiff worked in covered employment both before and after July 1, 1962 to achieve a gross monthly benefit, from which is subtracted a percentage for early retirement and an amount for health insurance and other options. Plaintiff received his first pension check in November of 1982.

Less than two years later, on July 9, 1984, plaintiff returned to work in covered employment. His early retirement benefits were suspended immediately upon his return, as provided for in § 7.07(a) of the Plan,[2] and his employers began making regular contributions to the Fund on his behalf. In February of 1987 plaintiff became permanently disabled and thus terminated his employment. In a letter received by defendant on March 25, 1987, plaintiff requested information about his early retirement benefits. Plaintiff sent another letter to defendant, dated June 2, 1987, in which he asked for "the information to consider my retirement." In July of that year, plaintiff, through his attorney, filed with the Fund an application for benefits seeking disability benefits and indicating that his last day of covered employment was February 6, 1987.

The Fund determined that plaintiff's application should be treated as one for early retirement with a conversion to disability pension, as provided for in § 4.03(c) [3] of the

---

1. The Standard Agreement originally called for a six-member Board of Trustees made up of three members from management and three from labor. The Standard Agreement has been subsequently amended to allow for an eight-member Board.

2. Section 7.07(a) states in relevant part:
   An Employee's monthly benefit shall be suspended for any month in which he worked or was paid for at least 40 hours in "Disqualifying Employment."
   Plan of Pension Benefits, Def.'s Mot. for Summ.J. at Ex. B. The section goes on to define "disqualifying employment" and other terms. It is uncontested in the present case that plaintiff worked more than 40 hours in disqualifying employment beginning in July of 1984.

3. Section 4.03(c) reads as follows:
   *Conversion to a Disability Retirement Pension*

An employee in receipt of an Immediate Retirement Pension who, at or prior to his date of early retirement, 1) makes application for a Social Security Disability benefit, 2) who, within 24 months of the date of early retirement, receives a Social Security Disability benefit, and 3) who qualifies for a Disability Retirement Pension *under Section 4.05 may elect to* discontinue his Early Retirement Pension and to receive a Disability Retirement pension in lieu thereof with payment commencing the first of the month following the month in which such election is received by the Trustees but with an Effective Date retroactive to the first day of the calendar month in which occurs *the effective date of the Social Security Disability Award.*
Plan of Pension Benefits, Def.'s Mot. for Summ.J. at Ex. B.

Plan.[4]  On August 10, 1987, defendant sent plaintiff a letter acknowledging receipt of plaintiff's application for disability pension and indicating that the Plan allows applicants to convert early retirement benefits to a disability benefits if they meet the requirement of § 4.03(c). Plaintiff then was asked to countersign the letter and return it to defendant's office if he wished to have his application processed as "an immediate early retirement pension pending receipt of a Social Security disability award." Plaintiff countersigned the letter on September 1, 1987, and sent it back to defendant. The letter makes no reference to § 4.05 of the Plan governing disability benefits, nor does it indicate that since plaintiff had taken early retirement in 1982, he could not elect a new form of benefit.

Indeed, plaintiff clearly thought he could elect a disability pension in lieu of an early retirement benefit. Plaintiff filed for social security disability benefits, which is a requirement for receiving disability benefits under either § 4.03(c) or § 4.05 of the Plan. He soon was informed by the Social Security Administration, in a letter dated September 23, 1987, that his application had been granted. This information was forwarded to defendant.

In November of 1987, defendant Milano informed plaintiff that his request for a disability pension was denied. Plaintiff appealed that decision to the Board of Trustees, which ruled in January of 1988 to deny the appeal. Plaintiff's reappeal was considered by the Board again in November of 1988 and again was denied. The Board primarily relied on the language in the last sentence of § 7.08(b) of the Plan, which says: "If a Retired Employee has returned to Covered Employment, he shall not be entitled to a new election as to the Husband and Wife Benefit, or any other optional form of benefit." Emphasizing the final phrase of that sentence, the Board ruled that since plaintiff elected early retirement pension in 1982 he could not elect a disability pension in 1987. The Board concluded that plaintiff only was entitled to have his early retirement pension recalculated based on his new retirement age and the additional months he spent in covered employment between 1984 and 1987.

It is the decision denying him benefits which plaintiff now attacks.[5]

## II

The two critical questions before the court are: first, what standard of review governs the court's examination of the Board of Trustees' decision denying plaintiff's application for disability pension? Second, considering the governing standard of review, was the Board's decision appropriate? The court addresses these two questions separately.

## A

■■■  Prior to the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), this Circuit reviewed decisions by ERISA plan administrators to deny benefits under an arbitrary and capricious standard. *See, e.g., Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567 (8th Cir.1984). The ruling in *Firestone,* however, made it clear that such a decision by plan administrators was subject to *de novo* review "unless the plan gives the administrator ... discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the decision is governed by an abuse of discretion standard. *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57. Where the administrators' decision requires interpretation of the pension plan language, the court should defer to the plan administrators' interpretation only if the plan clearly gives the administrators permissive authority to render decisions concerning ambiguous plan provisions. *See*

---

4. The record shows that Stuart Burd, on July 29, 1987, indicated on an inter-office letter to defendant Milano that plaintiff's application should be processed "in normal fashion—early retirement pension with a conversion to disability pension if Social Security Award granted (sic)." Def.'s Mot. for Summ.J. at Ex. Q.

5. There were several decisions denying plaintiff benefits. In this order, the court refers to the decision of the Board denying benefits and this is meant to include the decision of defendant Milano, who has been granted authority to make the initial decision on benefit eligibility.

*Baxter v. Lynn,* 886 F.2d 182, 187–88 (8th Cir.1989); *Wallace v. Firestone Tire & Rubber Co.,* 882 F.2d 1327, 1329 (8th Cir.1989).

The Plan in the present case does not have a provision in it which specifically governs employees who take early retirement, return to covered employment, and then become disabled. The Board of Trustees, therefore, was required to interpret provisions of the plan in order to render a decision on plaintiff's application. The Restated Agreement and Declaration of Trust provides the Board of Trustees with discretion when rendering such decisions. In Paragraph 3 of Article V—entitled "Powers and Duties of Trustees"—the Restated Agreement states:

> Subject to the stated purposes of the National Elevator Industry Pension Plan and the provisions of this Trust Agreement, the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters. They shall have full power to construe the provisions of this Trust Agreement and the Plan of Pension Benefits, and the terms used therein and any rules and regulations issued thereunder. Any such determination and any such construction adopted by the Trustees in good faith shall be binding upon NEII, the Union, employers, employees and their beneficiaries.

Restated Agreement and Declaration of Trust, Def.'s Mot. for Summ.J. at Ex. A. Furthermore, § 7.03 of the Plan declares that "[t]he Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any cases and the application and interpretation of this Plan, and the decisions of the Trustees shall be final and binding on all parties." Plan of Pension Benefits, Def.'s Mot. for Summ.J., Ex. B at 27.

■ Pursuant to these broad statements of authority, the court will disturb the Board's decision denying disability benefits only if the Board abused its discretion. Eighth Circuit case law suggests that the Board abused its discretion if its decision was "extraordinarily imprudent" or "extremely unreasonable." *See Cox v. Mid–America*

*Dairymen, Inc.,* 965 F.2d 569, 573 (8th Cir. 1992) (quoting George C. Bogert & George T. Bogert, The Law of Trusts and Trustees § 560, at 201–04 (rev. 2d ed. 1980)); *Bernards v. United of Omaha Life Ins. Co.,* 987 F.2d 486, 488–89 (8th Cir.1993) (citing *Cox* ).

## B

■ The issue of whether the Board abused its discretion has caused the court considerable consternation. As previously indicated, in deciding plaintiff's application the Board relied heavily on the language of § 7.08(b) of the Plan. After thoroughly reviewing the Plan, the court is mystified by the Board's reliance on this subsection, which hardly seems applicable to plaintiff's claim since the section principally discusses the Husband and Wife Benefit. The court concludes that the Board's reliance on § 7.08(b) is misplaced and, consequently, the decision denying benefits was arbitrary.

In its entirety, § 7.08(b) reads as follows:

> A Husband and Wife Benefit in effect immediately prior to suspension of benefits and any other benefit to take effect following the death of the Retired Employee, shall remain effective if the retired Employee's death occurs while his benefits are in suspension. If a Retired Employee has returned to Covered Employment, he shall not be entitled to a new election as to the Husband and Wife Benefit, or any other optional form of benefit.

This section is the only place in the entire fifty-page (excluding amendments) Plan which uses the "optional form of benefit" language. This phrase is not defined anywhere in the Plan.

The court has scoured the record to find something which might illuminate the issue of whether the last phrase of § 7.08(b) has the broad, all-encompassing meaning that the Board gave it when it denied plaintiff's appeal, or whether, as seems logical from the context of the section, it has some meaning related to the Husband and Wife Benefit. The only similar language is used for the first time in § 7.08(a) of the Plan, which refers to "any optional form of payment." That phrase also is not defined in the Plan,

though there is a section in "Income For Your Retirement: A Summary Description of the National Elevator Industry Pension Plan," Exhibit DD of Defendant's Motion for Summary Judgment at 22, which is entitled "Optional Forms of Payment." That section discusses the different ways a married pensioner may choose to have a Husband and Wife Benefit paid. While this is not dispositive of any issue, it is as close as the Plan comes to discussing the meaning of the "optional form of benefit" language and indicates to the court that the language is related to the Husband and Wife Benefit.

Nowhere in the Plan, other than possibly § 7.08(b), is there any indication that once an employee elects a form of pension he will not be allowed to change that if he returns to covered employment. Article IV of the Plan, which governs pension eligibility and amounts, does not contain a provision spelling this out. Section 7.07 provides that when a retired employee returns to covered employment, his pension will be suspended and will resume only after the employee leaves covered employment, but it does not state that an employee whose benefits are suspended cannot later elect a different form of pension. Surely a provision as important as this one, which might easily affect an employee's decision concerning when and whether to take an early retirement pension, should be stated explicitly somewhere in the Plan. It is not. Yet, the Board held that the "optional form of benefit language" buried at the end of § 7.08(b) prevents plaintiff from receiving a disability benefit after his return to covered employment.

Defendant urges the court to give the "optional form of benefit" language its ordinary meaning. Yet, what the ordinary meaning might be is not clear. The pensions available under the Plan—early retirement pension, normal retirement pension, vested pension, and disability pension—are not truly options.

Employees do not select the pension they wish to receive; they receive the one to which they are entitled. A fifty-five-year-old employee, for example, cannot opt for normal retirement benefits. Rather, if he is eligible for retirement benefits at all, it is only for early retirement benefits. An applicant for pension benefits receives the benefit to which his work history and age entitle him. He does not get to select his desired pension.

The only pension "options" available for those applying for pension benefits are as follows: (1) under § 4.03(b), an employee taking early retirement must decide whether to have it paid out as an immediate early retirement or a deferred early retirement; and (2) under § 4.03(c), a disabled employee under the age of 65 must decide whether he wants to receive an early retirement benefit until his disability benefit kicks in. Neither of these options are implicated in the instant case.[6]

There are, however, some benefits provided for in the Plan which more readily fit the "ordinary" definition of optional forms of benefits. A married employee, for example, has to decide whether to reject the Husband and Wife Benefit and opt for the Straight Life Benefit. See Article V of the Plan. If he opts for the Husband and Wife Benefit, the employee then has to decide how he wants the Husband and Wife Benefit paid. See "Third Amendment to the National Elevator Industry Pension Plan," Ex. B of Def.'s Mot. for Summ.J.; "Optional Forms of Payment," Ex. DD of Def.'s Mot. for Summ.J. at 22. There is also an optional Survivor's Benefit in Article VI which, if elected, results in a reduction of the monthly pension payable to the employee.[7]

In short, there are several provisions in the Plan which could be considered "optional forms of benefits" and which are related to the Husband and Wife Benefit. Limiting the scope of the "optional form of benefit" lan-

---

**6.** When plaintiff retired in 1982, he chose to receive an immediate early retirement as provided in § 4.03(b)(i). He does not seek now to change that selection. Also, plaintiff was not disabled when he retired in 1982, and thus he made no election under § 4.03(c). Therefore, even assuming § 7.08(b) can be read to bind an employee to previously elected pension options,

the two genuine pension options contained in the Plan do not affect plaintiff.

**7.** There are other options which employees can elect when they retire, such as health insurance for themselves and their dependents, which arguably could be considered "benefits."

guage to options similar to the Husband and Wife Benefit renders § 7.08(b) eminently more logical than the statute appears under the Board's interpretation. Clearly, § 7.08(b) is inapplicable to plaintiff's claim.

## C

 The question now becomes, if § 7.08(b) does not apply to plaintiff's application, then which section does? Certainly, plaintiff's application is not properly treated as an early retirement pension with the possibility of a conversion to a disability retirement under § 4.03(c). Plaintiff, at the time of his early retirement in 1982, did not apply for Social Security disability benefits, as required by § 4.03(c), because he was not disabled. Defendant contends that it is the date of plaintiff's first retirement in 1982, and not his subsequent retirement due to disability in 1987, which is the salient date for purposes of § 4.03(c), and the court does not disagree. Thus, plaintiff obviously cannot meet § 4.03(c)'s requirements.[8]

The only other possibility is § 4.05, which governs disability retirement pensions. That section contains several requirements for eligibility, all of which plaintiff unquestionably meets. None of these requirements states that to be eligible for disability a claimant cannot have taken early retirement previously. Since plaintiff meets all the requirements, and there is no reason otherwise that § 4.05 should not apply, the court concludes that plaintiff is entitled to a disability pension under the Plan.

## D

The court's result is the only logical conclusion to this case. Plaintiff should not have to pay a price for taking early retirement,

then returning to covered employment, and then becoming disabled. Yet, under the Board's interpretation, he would. Had plaintiff never retired in 1982, he now would be receiving a pension that properly reflects the fact that he is disabled. Had plaintiff not become disabled after his return to covered employment, he now would be receiving a retirement pension that properly reflects that he retired once, returned to covered employment, and retired again without a disability. The Board's ruling, however, deprived plaintiff of a pension which reflects the fact that he returned to covered employment, then became disabled. His present pension, as determined by the Board, reflects only the fact that he returned to covered employment for a time. The Board's decision should have been that plaintiff was entitled to a resumption in early retirement pension until the Social Security Administration granted him disability benefits, then he was entitled to disability pension under § 4.05.

## E

In summary, after a close inspection of the record, the court concludes that the Board of Trustees improperly relied on § 7.08(b) to deny plaintiff's appeal for disability pension. There is no other language in the Plan that prevents plaintiff's application from being reviewed under § 4.05. Plaintiff has met all the requirements of this section governing disability pension. Accordingly, it is

ORDERED that plaintiff's motion for summary judgment is granted; further, it is

ORDERED that defendant's motion for summary judgment is denied.

---

8. The court is curious why defendant reported to plaintiff that his application for disability benefits would be treated pursuant to § 4.03(c) since it should have been obvious to anyone aware of plaintiff's circumstances, as the record shows defendant was, that he could not meet the requirements of that section. Because plaintiff had taken early retirement in 1982, five years before he became disabled, he could not meet the very first requirement of § 4.03(c), which is that the employee must file for Social Security benefits prior to or at the same time as he files his early retirement application.

Moreover, if defendant had been consistently applying § 7.08(b) to prohibit changes in pension plan elections, then it should have been clear from the beginning that plaintiff, who had previously retired and then returned to covered employment, could not opt a different form of pension. Yet, instead of being informed from the start that he could not receive a disability pension, plaintiff was led to believe that he ultimately could receive a disability pension.