**J. Eydie BLESSING, Plaintiff,**

v.

**DEERE & COMPANY, d/b/a The John Deere Pension Plan, Defendant.**

Civil No. 4–96–CV–20490.

United States District Court,
S.D. Iowa,
Central Division.

May 14, 1997.

Order Denying Reconsideration
Aug. 1, 1997.

---

Max Burkey, Des Moines, IA, for Plaintiff.

John F. Lorentzen, Frank B. Harty, Des Moines, IA, for Defendant.

BREMER, Chief United States Magistrate Judge.

The Court has before it Defendant's Motion for Summary Judgment (Clerk's No. 10). Plaintiff, J. Eydie Blessing (Blessing), claims she was denied spousal benefits from her deceased common-law husband, Walter Taylor's (Taylor), pension plan in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1996). Defendant, Deere & Company, d/b/a The John Deere Pension Plan (Deere), moves for summary judgment on the basis that the administrator's denial of Blessing's claim was not an abuse of discretion. Specifically, Deere claims the administrator did not abuse her discretion in determining the plan was not liable to Blessing for benefits on the grounds that (1) Blessing did not establish she had a valid marriage as required by the plan, and (2) Taylor did not designate Blessing as his wife.

Plaintiff's Resistance to Motion for Summary Judgment was filed February 26, 1997. Defendant filed a reply brief on March 6, 1997. This matter is fully submitted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Taylor and Blessing married in 1951. On September 14, 1959, Taylor began his employment with Deere, where he worked until he retired in 1986. In 1966, the couple divorced. Taylor married his second wife,

Georgia,[1] in October 1966, and subsequently divorced her. He married his third wife, Ann Hupp, in 1974. Taylor and Ann had a son, Billie Taylor. Taylor and Ann divorced in 1981.

Plaintiff married John Blessing in 1973. They had a daughter, Riki. The couple divorced in 1977. In March 1981, Plaintiff and Taylor began living together and cohabitated until Taylor's death in 1988.

In February 1984, Taylor changed the beneficiary of his life insurance policy from Ann Taylor to "Juanita E. Blessing, Ex–Wife and Billie S. Taylor, Son, Equally, or to the Survivor." (Def.'s Ex. K & L.) On March 20, 1986, the John Deere Pension Plan wrote an "Informal Estimate for Special Early Retirement" for Taylor based on information he gave them. The estimate shows Taylor as being single and that no money would be distributed to a surviving designated spouse. (Def.'s Ex. M.)

Taylor signed an application for the Special Early Retirement Plan on April 15, 1986. On this application he indicated he was single and designated "N/A" in the area for spousal name and information. (Def.'s Ex. N.) Taylor signed an Authorization for Deposit so that his pension payments could be deposited directly into his checking account. This form contained an area for a spouse's signature, which was left blank. (Def.'s Ex. O.) On May 8, 1986, Taylor chose "Offset, Single" for his pension payment method, and chose one allowance for tax deductions and stated that he was single on a tax withholdings certificate.

Taylor retired from work at Deere on May 30, 1986. After retirement, Taylor enrolled in a retirement health care plan. Taylor indicated on this form that he was single. (Def.'s Ex. S.)

Taylor died on May 22, 1988. The statement of death issued by the Ankeny Funeral Home indicated that J. Eydie Blessing–Taylor was Taylor's widow. (Def.'s Ex. Q.)

Shortly after Taylor's death, four of Blessing's and Taylor's relatives filled out Statements Regarding Marriage supporting Blessing's claim of a common-law marriage and

her application for Social Security benefits based on Taylor's earnings. (Def.'s Ex. D, E, G, and H). In the statements, the relatives indicated that they considered Blessing and Taylor to have been husband and wife, the couple cohabitated, and the couple held themselves out to the public as married.

In July 1988, a Social Security claims representative concluded that a common-law marriage existed between Taylor and Blessing and approved Blessing's application for benefits from Taylor's account. (Def.'s Ex. H.) The decision noted that Blessing kept her last name for the sake of her child, Riki Blessing, living with her.

In 1993, Blessing inquired into spousal benefits under the John Deere Pension Plan. In response, Mary Ann Madole, Deere's Supervisor of Employee Benefits and Administrator of the Pension Plan, told Blessing in a letter dated November 18, 1993, that a common-law spouse could collect surviving-spouse pension benefits under Deere's plan, if the participant notified the plan about the common-law marriage at least one year prior to death. (Def.'s Ex. J.) Madole also stated that to be eligible for surviving-spouse benefits, the surviving spouse must have been married to the participant at least one year before the participant's death. *Id.*

In October 1994, Madole sent a copy of information in Taylor's personnel records to Blessing's attorney at his request. (Def.'s Ex. V.) The information included copies of the above-described documents that Taylor signed indicating he was not married.

On August 22, 1995, Blessing's attorney sent a letter to Madole, making a written claim on Blessing's behalf for past due and future spousal benefits. (Def.'s Ex. W.) Included in the letter were copies of the documents Blessing submitted to Social Security to establish the existence of a common-law marriage in support of her benefits claim. In addition, Blessing's attorney stated in the letter that he had interviewed several persons who would testify that Taylor and Blessing had a common-law marriage for several years before Taylor's death:

1. The record does not indicate Georgia's last name.

[These persons] include current and former members of the Ankeny Police Department, such as Sid Conkel and Loren Bowers. Also included in our investigation are statements from the family physician, Dr. Larry Gray, of Ankeny. We have also interviewed former school teachers of Walter's son, Billy, several family friends and the family Minister.

*Id.* at 2.

Madole gave the letter and attachments to Patricia VanBruwaene, manager of the John Deere Pension, Healthcare and Flex Benefits Program, for review. (Def.'s Ex. X.) On September 25, 1995, VanBruwaene sent a memorandum to Madole in which she stated, "it is still my belief that Eydie Blessing is not entitled to the surviving spouse benefit." (Def.'s Ex. Y.) She based her conclusion on two grounds. *Id.* First, she believed that no common-law marriage existed between Blessing and Taylor before Taylor retired in 1986.[2] Second, even if a common-law marriage existed, Taylor presented himself to the plan as single and never elected to include spousal survivor coverage benefits.

On October 6, 1995, Madole sent Blessing's attorney a notice of claim denial. (Def.'s Ex. Z.) The notice stated the reasons for the denial were that (1) at retirement, Taylor presented himself as single to Deere on all employment and health benefit records; and (2) Taylor failed to acknowledge a common-law marriage with Blessing and complete the required application for survivor's benefits at least a year before his death.[3] *Id.* The notice did not give as a reason for denial the finding that no valid common-law marriage existed between Blessing and Taylor before Taylor's retirement or at least one year before his death.

On December 19, 1995, Blessing's attorney sent a letter to Madole requesting a copy of the summary plan description explaining Blessing's appeal rights so he could initiate the appeal process. (Def.'s Ex. AA.) On December 21, 1995, Madole sent Blessing's attorney a copy of the portions of the plan describing procedures concerning denial of benefits, and told him to direct a request for review to VanBruwaene. (Def.'s Ex. BB.)

The attorney sent a notice of appeal to VanBruwaene on January 2, 1996. (Def.'s Ex. CC.) He included his original benefits claim of August 22, 1995. He reiterated that "there is a myriad of people who will testify to this common law marriage." *Id.* The attorney also informed VanBruwaene that the plan was "required by law to pay survivors' benefits whether or not Mr. Taylor was aware that this common-law marriage was binding on his pension plan benefits to his survivor." He requested a complete copy of the summary plan description.

On March 7, 1996, VanBruwaene denied the appeal and attached a copy of the summary plan description. (Def.'s Ex. DD.) The notice stated the reasons for the denial were as follows: (1) while employed, Taylor did not request entry of a name of a spouse on his personnel records or health care insurance coverage; (2) when he initiated a change in his life insurance beneficiary in 1984, Taylor designated "Juanita E. Blessing, Ex–Wife and Billie S. Taylor, Son" as beneficiaries; (3) Taylor did not request spousal-benefit coverage at his retirement processing in 1986 and in a subsequent retirement election application; and (4) after retiring, Taylor did not apply for survivor benefits. *Id.* The notice further stated that Blessing's appeal was time-barred and that no further

---

2. VanBruwaene believed Iowa law required cohabitation for seven years as an element to establish a common-law marriage. (Def.'s Ex. Y.) Thus, because Taylor and Blessing began living together in 1981, VanBruwaene believed they could not have a valid common-law marriage before Taylor retired in 1986.

3. Madole's notice of denial stated as follows:
Your letter of 22 August 1995 with attachments was referred to the Deere & Company Manager of Pensions for review. Ms. Blessing's eligibility for survivor's benefits under the John

Deere Pension Trust Fund is denied. Mr. Taylor presented himself to John Deere as a single man at retirement and with regard to all employment and health benefit records. Mr. Taylor would have had to have acknowledged a common law marriage with Ms. Blessings [sic] and completed the required application for survivor's benefits at least one year prior to his death in order for Ms. Blessings [sic] to receive survivor's benefits from John Deere.
Def.'s Ex. Z.

right of appeal existed.[4] *Id.* The notice did not give as a reason for denial the finding that no common-law marriage existed between Blessing and Taylor at least one year before Taylor's death.

## II. CONCLUSIONS OF LAW

### A. Standard of Review

#### 1. Motion for Summary Judgment

A party is entitled to summary judgment if no genuine issue as to any material facts exists, and if the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir.1996). Summary judgment is inappropriate, however, where the record permits reasonable minds to draw conflicting inferences about a material fact. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Donaho,* 74 F.3d at 898. On a motion for summary judgment, a court must give the non-moving party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Donaho,* 74 F.3d at 897–98.

#### 2. Denial of ERISA Benefits

■ A court reviewing an ERISA plan administrator's decision denying benefits should apply a de novo standard of review unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Donaho,* 74 F.3d at 898. If a plan gives the administrator discretionary authority, then a court should review a plan administrator's decision only for abuse of discretion. *Bruch,* 489 U.S. at 115, 109 S.Ct. at

956; *Donaho,* 74 F.3d at 898; *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 571 (8th Cir.1992), *aff'd after remand,* 13 F.3d 272 (8th Cir.1993).

■ Here, the parties dispute which standard of review the Court should use in reviewing the administrator's decision. The parties agree the plan in effect when Taylor died did not give the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. The parties also agree the amended plan in effect when Blessing applied for surviving-spouse benefits gave the administrator discretionary authority.[5] The Court has reviewed the amended plan's language and finds that the plan gave the administrator discretionary authority to determine eligibility for benefits and to construe the plan's terms.

The parties disagree, however, as to which plan controls for purposes of determining the standard of review. Blessing opposes retroactive application of the amended plan, which grants discretion to the administrator. She contends the first plan controls, and the standard of review is de novo. Deere argues the second plan controls, and the Court should review the administrator's decision for abuse of discretion.

Blessing relies on *Oil, Chem. & Atomic Workers Local Union 4–447 v. Chevron Chem. Co.,* No. 91–4587, 1994 WL 10149 (E.D.La.1994) for the proposition that an amendment granting discretionary authority does not apply retroactively, and that therefore the de novo standard of review should apply in this case. *Oil, Chem. & Atomic Workers,* however, is not dispositive because, unlike here, the plan in *Oil, Chem. & Atomic Workers* specifically stated that, "Any amendment or termination of the Plan will not affect any claim incurred by a Member or

---

**4.** Deere does not assert as a ground for its Motion for Summary Judgment that the administrator did not abuse her discretion in determining the plan was not liable to Blessing for benefits because Blessing's appeal was time barred. The Court therefore does not address this issue.

**5.** The amended plan included the following provision:

F. Interpretations, Adjustments and Mistaken Payments

To the extent permitted by law, an interpretation of the Plan and/or a decision on any matter within the Administrator's discretion made in good faith is binding on all participants, beneficiaries and persons. A misstatement or mistake of fact, or mistaken payment, or excess payment shall automatically be corrected as soon as is practicable after it becomes known.

Def.'s Ex. A2.

Covered Dependent before the amendment or termination." *Id.* at *4. For the following reasons, the Court nevertheless believes that the amendment in this case establishing discretionary review should be applied.

■ Under ERISA's "anti-cutback rule," an amendment may not be applied retroactively if it would deprive participants of benefits to which they would otherwise be entitled. *Dyce v. Salaried Employees' Pension Plan of Allied Corp.,* 15 F.3d 163, 165 (11th Cir.1994); *Williams v. Cordis Corp.,* 30 F.3d 1429, 1431 (11th Cir.1994) (per curiam); *see Adams v. LTV Steel Mining Co.,* 936 F.2d 368, 371 (8th Cir.1991), *cert. denied,* 502 U.S. 1073, 112 S.Ct. 968, 117 L.Ed.2d 134 (1992); 29 U.S.C. § 1054(g)(1).

Here, as explained below, Blessing would be entitled to benefits if she and Taylor had a valid common-law marriage at least a year before his death. Thus, if using an abuse-of-discretion standard to review the administrator's decision denying benefits would deprive Blessing of this benefit, the amendment providing for the administrator's discretion should not be applied retroactively. *See Bruch,* 489 U.S. at 113–14, 109 S.Ct. at 955–56 (stating that imposing arbitrary-and-capricious standard of review for claims denials would give less protection to employees and their beneficiaries than they had before ERISA was enacted; refusing to apply such standard in all cases, and holding de novo review standard applied unless plan gave administrator discretion).

Because the issue is undecided, because the result of the Court's review would be substantially the same in this case under either standard, and because the result of using the abuse-of-discretion standard to review the administrator's decision does not under these circumstances deprive Blessing of a benefit, the Court will review the administrator's decision for abuse of discretion, the standard most favorable to Deere.

### B. Entitlement to Benefits for Unknown Surviving Spouse

■ Unless a participant waives the requirement, ERISA requires plan participants to take retirement benefits as a joint and survivor annuity, which pays benefits to the participant for life and to a surviving spouse for life, rather than as a single life annuity, which pays greater sums than does a joint and survivor annuity, but pays during the participant's life only. *See* 29 U.S.C. § 1055(a)(1), (c)(1)(A)(i) & (c)(7)(A); *Hearn v. Western Conference of Teamsters Pension Trust Fund,* 68 F.3d 301, 303 (9th Cir.1995). To waive the joint and survivor annuity requirement, a participant must get his spouse's written consent. Alternatively, the participant may establish to the plan administrator's satisfaction that he could not get the consent, either because he had no wife or could not locate her. *See* 29 U.S.C. § 1055(c)(2); *Hearn,* 68 F.3d at 303.

Although the Eighth Circuit has not addressed the issue, at least one court has held that under ERISA, a pension plan is not relieved of all liability to a surviving widow after her deceased husband waived her right to survivor benefits without obtaining her written consent. *Hearn,* 68 F.3d at 305–06. Specifically, a pension plan is discharged from liability to an unknown, but otherwise qualified, surviving spouse only to the extent it made payments under the plan to the deceased spouse; the plan remains liable to the surviving spouse to the extent its debt to the surviving spouse exceeds its overpayments to the deceased. *Id.*

Blessing asserts that under ERISA she is entitled to pension benefits as an unknown surviving spouse, in that she and Taylor had a valid common-law marriage at least one year before Taylor's death, and Taylor waived her right to benefits without obtaining her consent.

The Court finds the reasoning in *Hearn* persuasive. The Court holds that if Blessing and Taylor had a valid common-law marriage at least one year before Taylor died, as required by the plan, and if Taylor waived joint and survivor annuity benefits without Blessing's consent,[6] then the joint and survivor

---

6. Deere does not contend that Blessing consented to Taylor's waiver of joint and survivor bene- fits.

annuity requirement was not properly waived under 29 U.S.C. § 1055(c)(2), and Blessing is entitled to survivor benefits.

### C. Common-law Marriage

In Iowa, three elements must be proved to establish a common-law marriage: (1) present intent and agreement to be married; (2) continuous cohabitation; and (3) public declaration that the parties are husband and wife. *In re Marriage of Gebhardt,* 426 N.W.2d 651, 652 (Iowa App.1988); *In re Marriage of Winegard,* 278 N.W.2d 505, 510 (Iowa 1979); *Conklin v. MacMillan Oil Co.,* 557 N.W.2d 102, 104 (Iowa.Ct.App.1996). There is no requirement that a couple must continuously cohabitate for seven years, or for any other specific time period, nor was there any such requirement during the time period at issue in this case.

When one party is deceased, the party asserting the marriage must prove the elements of a common-law marriage by a preponderance of clear, consistent, and convincing evidence. *Conklin,* 557 N.W.2d at 105. Continuous cohabitation of the parties and the declaration or holding out to the public that they were husband and wife is circumstantial evidence that tends to create a fair presumption that a common-law marriage existed. *Id.* A general and substantial holding out or open declaration to the public has been said to be the "acid test" of a common-law marriage. *Id.*

Where a couple cohabit and the conduct of one person justifies the other in believing he or she intended to be married, then that person may be entitled to marital rights if the person's intention is to be married, even if the other's intention was different. *Id.*

### D. Abuse of Discretion

Under the abuse-of-discretion standard, a court applies a deferential standard of review to an administrator's plan interpretation and fact-based eligibility determinations. *See Donaho,* 74 F.3d at 898. The deferential standard does not allow a reviewing court to reject an administrator's discretionary decision simply because the court disagrees. *Id.* The proper inquiry is "whether the plan administrator's decision was reasonable; i.e., supported by substantial evidence." *Donaho,* 74 F.3d at 899. A court will affirm an administrator's reasonable interpretation of a plan. *Cox v. Mid–America Dairymen, Inc.,* 13 F.3d 272, 274 (8th Cir.1993); *Finley v. Special Agents Mut. Benefit Ass'n, Inc.,* 957 F.2d 617, 621 (8th Cir.1992). An exception to this rule provides that a court will reject an administrator's decision if she or he has made an erroneous decision on a question of law. *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 571 (8th Cir.1984) (cited in *Donaho,* 74 F.3d at 898, 900).

*Finley* outlines a five-factor test to evaluate the reasonableness of an administrator's decision in interpreting and applying plan provisions: (1) whether the administrator's interpretation is consistent with the goals of the plan; (2) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the plan. *Finley,* 957 F.2d at 621; *see Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir.1997); *Buttram v. Central States, Southeast & Southwest Areas Health & Welfare Fund,* 76 F.3d 896, 901 (8th Cir. 1996); *Lickteig v. Business Men's Assurance Co.,* 61 F.3d 579, 583–84 (8th Cir.1995).

To properly apply the deferential standard of review, "a reviewing court must be provided the rationale underlying the trustee's discretionary decision." *Cox,* 965 F.2d at 574.

A court's decision as to whether a plan administrator abused his or her discretion must be based on facts known to the administrator at the time the benefits claim decision was made. *Cash,* 107 F.3d at 641; *Collins v. Central States Southeast and Southwest Areas Health & Welfare Fund,* 18

F.3d 556, 560 (8th Cir.1991).[7] The court cannot substitute its own weighing of the conflicting evidence for that of the plan administrator. *Cash,* 107 F.3d at 641; *Cox,* 965 F.2d 569, 573 (8th Cir.1992).

■ A decisionmaker can abuse its discretion if it fails to obtain necessary information, without which an administrator lacks substantial evidence to support his or her decision. *See Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan,* 874 F.2d 496, 499 (8th Cir.1989). An administrator also can abuse his or her discretion where the administrator's decision to deny benefits is based on little or no probative evidence establishing a fact central to the decision. *See Ritzer v. National Org. of Indus. Trade Unions Ins. Trust Fund Hosp. Medical Surgical Health Benefit,* 807 F.Supp. 257, 262 (E.D.N.Y.1992).

### 1. *Validity of Marriage*

■ Deere asserts the administrator did not abuse her discretion in determining Blessing failed to establish a valid marriage. Deere argues in its Reply that, "At the core of the Plan Administrator's decision was a determination that Eydie and Walter were not married and, consequently, Eydie was not a surviving spouse entitled to benefits." (Def.'s Reply at 4.) Deere asserts that abundant evidence in the record, in the form of Taylor's representations to the plan and Deere, supports the administrator's finding.

The Court agrees that the key issue before the administrator was whether Blessing and Taylor had a valid common-law marriage one year before Taylor died. If they did, then whether or not Taylor designated Blessing as his wife is irrelevant, because as held above, Blessing is entitled to surviving-spouse benefits if Taylor did not get her consent before waiving those benefits. If the two did not have a valid common-law marriage one year before Taylor died, then whether or not Taylor designated Blessing as his wife is still irrelevant, because even if he had so desig-

nated her, as a non-spouse she would not be entitled to benefits.

The Court, however, disagrees with Deere that there was substantial evidence before the administrator to support her finding. The evidence was conflicting and non-probative on the issue of the validity of Blessing's common-law marriage. On one hand, Blessing's statements of marriage, all submitted by relatives for purposes of helping her obtain Social Security benefits, were self-serving and therefore of limited probative value. On the other hand, Taylor, if married, likewise had a self-serving interest in signing various papers at Deere indicating he had no wife, and entitling him to larger pension payments; or perhaps he was under the same legal misapprehension as was the administrator, and believed he needed to have cohabitated for seven years with the intent to be married before a common-law marriage existed. In either case, Deere's evidence on this issue is also of limited probative value.

Questions of fact existed concerning the validity of the common-law marriage, and whether it was in existence at least one year before Taylor's death. In her benefits application, Blessing offered the names of several non-family members who allegedly were willing to testify to the fact that Taylor and Blessing held themselves out publicly as man and wife, but the record contains no statements by these persons. The administrator could easily have contacted the persons named, such as the family physician and former and current police officers, but chose not to gather the information. At a minimum, the administrator could have asked Blessing to supply statements from the non-family members. Instead, the administrator simply accepted Taylor's representations in the papers he signed. Because, as explained below, Madole did not give Blessing adequate notice of this reason for denial of her claim in the October 6, 1995, letter, Blessing had no reason to submit the additional statements when requesting further review from Van-

---

7. Even on de novo review, courts are discouraged from considering evidence not presented to the administrator. *Cash,* 107 F.3d at 641. Although when reviewing a plan's decision de novo, a court may, for good cause shown, allow parties to introduce evidence in addition to that presented to the administrator. *Ravenscraft v. Hy–Vee Employee Benefit Plan & Trust,* 85 F.3d 398, 402 (8th Cir.1996).

Bruwaene. The Court cannot conclude, based on the evidence before either Madole or VanBruwaene, that the administrator's decision on this issue was reasonable, i.e., supported by substantial evidence. *See Donaho,* 74 F.3d at 899.

■ Moreover, VanBruwaene made an erroneous decision on a question of law when she determined that until Blessing and Taylor had cohabitated for seven years they could not have had a valid common-law marriage. VanBruwaene communicated this erroneous decision to Madole in a memorandum on September 25, 1995 (Def.'s Ex. Y.), before Madole issued her denial-of-benefits decision on October 6, 1995.

As did the court in *Cox,* the Court encounters serious problems in trying to review the administrator's decision under the abuse-of-discretion standard. *See Cox,* 965 F.2d at 573. First, the administrator's interpretation of the plan as providing coverage for surviving common-law spouses raises further questions of plan interpretation, such as, the nature of the evidence the administrator considered probative on this issue under the plan, especially in view of Taylor's statements to the plan that he was not married. The administrator's decision, however, gives no indication as to how she interpreted the plan in this regard, thus precluding judicial review of this issue.

■ Second, much as in *Cox,* the administrator's written notices to Blessing gave her an incomplete explanation for the decision. ERISA and its regulations require a trustee to provide the claimant a written decision "setting forth the specific reason for such denial, written in a manner calculated to be understood by the [claimant]." 29 U.S.C. § 113; *Cox,* 965 F.2d at 573 n. 5 (reversing benefits award, where ERISA trustees failed to adequately explain basis of their discretionary decisions, including failing to articulate how they resolved crucial conflicts in evidence before them); *see* 29 C.F.R. § 2560.503–1(h)(3). Even an initial claim denial notice, which need not be extensive, must at least explain "the basis for the adverse initial decision sufficiently to permit the claimant to prepare an informed request for further review." *Kinkead v. Southwest-*

*ern Bell Corp. Sickness & Accident Disability Benefit Plan,* No. 96–2282, 1997 WL 163614, at *2 (8th Cir. Apr.9, 1997). Where ERISA trustees have not adequately explained the basis for their discretionary decisions, a court may remand to the decisionmaker for reconsideration of the application for benefits. *Cox,* 965 F.2d at 574.

Here, Madole's initial claim-denial notice on October 6, 1995, failed to state that the denial was based on a finding that no valid common-law marriage existed at least one year before Taylor died. Blessing may have obtained additional evidence if she had been apprised of the real reason for the denial. For instance, she could have gathered and submitted the statements from the non-family members she indicated in her claim would testify as to the validity of the marriage years before Taylor died. VanBruwaene's notice on March 7, 1996, also failed to state that the denial was based on a finding that no valid common-law marriage existed one year before Taylor died.

For these reasons, the Court cannot hold as a matter of law that the administrator did not abuse her discretion in determining Blessing failed to establish a valid marriage. Deere is not entitled to summary judgment on this issue.

### 2. Designation of Spouse

■ Deere asserts the administrator did not abuse her discretion in determining Blessing was not entitled to surviving-spouse benefits, because Taylor never designated her as a spouse at least a year before his death.

As discussed above, Taylor did not properly waive the joint and survivor annuity requirement under ERISA, because he did not get Blessing's written consent to the waiver. Assuming Blessing is a surviving spouse, she is thus entitled to benefits under ERISA's provisions. This result is not changed by Taylor's failure to meet the plan's designation requirement, which functioned as an additional waiver without Blessing's consent. For the administrator to decide otherwise constituted an erroneous decision on a question of law and violated the third *Finley* factor: whether the administrator's interpre-

tation conflicts with the substantive or procedural requirements of the ERISA statute.

Here again, the Court encounters serious problems in trying to review the administrator's decision under the abuse-of-discretion standard. *See Cox*, 965 F.2d at 573. The administrator's interpretation of the plan as providing coverage for surviving common-law spouses raises further questions of plan interpretation, such as, the elements required to prove the validity of a common-law marriage before the designation requirement is triggered. The administrator's misunderstanding of the law regarding the alleged requirement that seven years of cohabitation was necessary to establish a common-law marriage may have been communicated to Taylor when he filled out his various retirement and health-benefit applications. If Taylor had, for whatever reason, the same misunderstanding about the law that the administrator had, that misunderstanding may have led to his failure to designate Blessing as his spouse before or after his retirement. The administrator's decision, however, gives no indication as to how she interpreted the plan in this regard, thus precluding judicial review of this issue.

The Court, therefore, cannot hold as a matter of law that the administrator did not abuse her discretion in determining Blessing was not entitled to surviving-spouse benefits, because Taylor never designated her as a spouse. Deere is not entitled to summary judgment on this issue.

## III. CONCLUSION

A material question of fact remains as to the administrator's findings on the issue of the validity of Blessing's common-law marriage at least one year before Taylor's death. Because the administrators did not adequately explain their decision to deny Blessing benefits, the Court cannot determine whether their discretion was abused. The Court therefore remands the proceedings for reconsideration of Blessing's application for surviving-spouse benefits.

The plan administrator shall complete the reconsideration and any appeals process no later than September 16, 1997. The Final Pretrial Conference set for May 30, 1997, is

canceled and trial set for June 6, 1997, is continued and will be reset after the plan administrator completes the reconsideration. A status conference will be held September 26, 1997, at 2:30 p.m. by conference call placed by Plaintiff's counsel to discuss new deadlines for trial and/or cross motions for summary judgment.

Defendant's Motion for Summary Judgment is denied.

IT IS SO ORDERED.

## ORDER ON PLAINTIFF'S MOTION TO RECONSIDER

This is a case involving an ERISA benefits plan. This Court denied Defendant Deere & Company's, d/b/a The John Deere Pension Plan (Deere), Motion for Summary Judgment (Clerk's No. 10) in its May 14, 1997, ruling (Clerk's No. 18). The Court remanded the case to the plan administrator for reconsideration of Plaintiff J. Eydie Blessing's (Blessing) application for spousal benefits. Deere filed a Motion for Reconsideration and a Request for Oral Argument (Clerk's No. 19) on May 29, 1997. Blessing resisted the Motion. The Court held a hearing on the Motion on July 29, 1997. This matter is fully submitted.

*Factual and Procedural Background.* The Court incorporates the facts set forth in pages 1 through 5 of its May 14, 1997, ruling. As noted in that ruling, Blessing supplied the plan administrator with evidence to support her assertion that she and Walter Taylor had a valid common-law marriage. The evidence included affidavits and a decision by the Social Security Administration holding the common-law marriage was valid. Some of the affidavits indicated Blessing and Taylor represented themselves to the public as husband and wife.

Neither the October 6, 1995, nor March 7, 1996, notice of benefits denial mentioned the evidence Blessing's attorney sent to support the benefits application. The notices referred only to the employer's retirement and health benefits records signed by Taylor, which is evidence that conflicted with the affidavits and the Social Security Administration's decision. The notices of denial did not

explain why the administrator rejected the Social Security Administration's contrary determination that Blessing and Taylor's common-law marriage was valid. The administrator did not articulate in the notices how she resolved the conflicts in the evidence before her; nor did she acknowledge receipt of, or indicate the weight she gave to, the various affidavits Blessing supplied.

*Summary Judgment Standard.* A court may not grant a motion for summary judgment unless there is no genuine issue of material fact and the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56; *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is filed, the moving party bears the burden of demonstrating that no genuine factual issue exists. In deciding whether any genuine factual dispute exists, the court must consider all evidence in the summary judgment record in the light must favorable the party resisting the motion. *Behrens v. Pelletier,* 516 U.S. 299, ——, 116 S.Ct. 834, ——, 133 L.Ed.2d 773, 777 (1996).

*Claims for Declaratory Relief and for Benefits Due.* Upon reconsideration, the Court again denies Deere's Motion for Summary Judgment on Blessing's claims for declaratory relief and for benefits due. Blessing has generated fact questions that preclude entry of summary judgment against her. The questions include, but are not limited to, the basis of Deere's decision to deny benefits, including the administrator's findings and basis for the findings on the issue of the validity of Blessing's common-law marriage.

In its May 14 ruling, the Court remanded the case to the administrator for reconsideration of Blessing's application for spousal benefits. Deere objects to this remand, and argues that the Court should decide the case on the record that existed at the time the administrator made her decision.

 For the reasons outlined in the May 14 ruling, the Court applies a deferential standard of review.[1] Under such a standard, a court will likely find that there has been an abuse of discretion if the administrator's action "is extraordinarily imprudent or extremely unreasonable." *Cox v. Mid-America Dairymen, Inc.,* 965 F.2d 569, 572 (8th Cir.1992). The plan administrator must supply the reviewing court with a sufficient explanation of the rationale underlying the trustee's decision to permit review under the deferential standard of review. *Id.* at 574.

 Where conflicting material evidence underlies the decision, the administrator's written notices to the claimant must give a satisfactory explanation of the decision, articulating how the administrator resolved crucial conflicts in the evidence. *Id.* at 573. A district court may not, where conflicting evidence underlies the decision, go beyond the deferential standard of review and substitute its own weighing of the conflicting evidence for that of the plan's administrator. *Id.* When conflicting evidence could arguably support a decision either way, and the administrator has failed to provide an adequate explanation of the decision, judicial review is precluded, and the court may properly remand to the plan administrator for reconsideration of the application for benefits. *See id.*

In this case, evidence concerning the critical issue of the validity of the common-law marriage is conflicting. The plan administrator never articulated how she resolved the conflicts in the evidence before her. The Court may not go beyond the deferential standard of review and substitute its own weighing of the conflicting evidence for that of the plan's administrator. *See Cox,* 965 F.2d at 573.

The Court concludes the administrator has failed to provide a sufficient explanation of her rationale to permit this Court to review her decision under the appropriate deferential standard of review. The Court therefore denies the Motion to Reconsider insofar as it requests entry of summary judgment for Deere, and remands the proceedings for re-

1. Deere alleges the Court applied a de novo standard of review in its May 14 ruling. To remove any ambiguity and avoid the appearance of making a de novo review, the Court strikes all references in its May 14 ruling to "probative" or "substantial" evidence.

consideration by the plan administrator of Blessing's application for spousal benefits.

*Status of Case.* The plan administrator shall complete reconsideration of Blessing's application for benefits by September 19, 1997. The status conference remains set for 2:30 p.m. on Friday, September 26, 1997.

Based on the foregoing, Defendant's Motion for Reconsideration is denied.

IT IS SO ORDERED.